## THE CITY OF MUSCATINE v. HERSHEY.

1. Wharf: STATUTE CONSTRUED. Under § 18 of clause 5 of the charter of the city of Muscatine, and the ordinance of the city enacted thereunder, no wharfage fee can be charged upon a raft landed at the river side within the city limits before it is sold or drawn out of the river.

2. —— Semble, that the city cannot charge wharfage for rafts landed at a point within the limits of the city which has not been designated as a wharf.

*Appeal from Muscatine District Court.*

SATURDAY, DECEMBER 17.

THIS action was brought to recover for certain wharfage, claimed by the city against the defendant, upon a raft of pine logs, under an ordinance of January 30, 1864. Judgment for plaintiff, and defendant appeals.

*D. C. Cloud* and *Richmond & Carskadden* for the appellant.

*Henry O'Connor* for the appellee.

WRIGHT, Ch. J. — By the charter of the city of Muscatine, approved February 1, 1851, § 18, cl. 5, it is declared

1. WHARF: statute construed. that the city shall "have the control of the landing on the Mississippi river, and build wharves and regulate the landing, wharfage and dockage of boats, and all water crafts, goods, lumber, and other things that arise from the same."

By the ordinance in question it is provided that "the landing on the Mississippi river from the foot of Iowa Avenue to the foot of Pine street, including the width of both of these streets, is declared to be a steamboat wharf, and shall be kept clear of obstructions, &c. A wharfage of three dollars shall be charged and paid for each steamboat landing at the wharf, or any other point within the city limits. * * * All rafts of sawed lumber or logs *landed and sold or drawn out* within the city limits, shall pay a wharfage of two cents per thousand feet."

It appears that defendant owns a mill within the city limits, on or near the bank of the Mississippi river, but some distance from the steamboat wharf, as defined in the above ordinance. He owned the fee of the land to the river, but had given to the Mississippi and Missouri Railroad Company the right of way along the water line in front of the mill. At the time the demand was made by the wharf-master for the wharfage, the raft of defendant *was in the water in front of and above the mill*, at a point where the city had prepared no wharf or landing, and there was no street or passage-way between said mill property and the river. The city had never claimed the right to use the land opposite the mill, save by the terms of the ordinance in question. The raft was fastened to posts prepared by the defendant at his own expense and for his own use, and it was thus cabled, not sold, nor drawn out at the time the demand was made. Defendant, and those under whom he claims, has had exclusive use of the premises to the water's edge for ten years. There is no controversy as to the amount which defendant should pay, if he is liable upon the above facts.

After duly considering these facts in connection with the charter and ordinance, we think this judgment must be reversed.

In the first place, if defendant, *after* selling or drawing

out this raft, would be liable to the wharfage, he would not until it was either sold or drawn out. The mere *landing* of the raft does not make the owner liable, but it must be "landed *and* sold *or* drawn out." This is the clear language of the ordinance, and there can be no difficulty in its construction. As to the proof there is as little difficulty. Two witnesses testify upon the subject, the wharf-master and Benjamin Hershey, and they both agree in saying that the raft was in the river. One of them says nothing about the sale or drawing out, while the other (who seems to be either the real defendant or his agent) says, expressly that it had been neither sold or drawn out. And this testimony stands entirely uncontradicted. Under such circumstances the action was at least premature, and the verdict should have been for defendant.

This conclusion disposes of the case as now before us. As defendant may be again prosecuted, or a similar question may arise in other cases, it may not be improper to suggest some possible, not to say probable, difficulties in the way of the right of the city to recover, even where the raft has been sold or drawn out as well as landed.

It will be seen that a wharf has been designated and prepared for the landing of steamboats. But no specific place or part of the landing has been set apart for the landing of rafts. Nor does it appear that the city has constructed any wharf for this purpose. Nor, again, has she provided any conveniences, by posts, rings, or otherwise for landing and fastening such rafts. And if such wharf and conveniences were provided, there is no penalty for landing at any other place. Now, to say the least, it may well be doubted whether until the city has done something to indicate where rafts shall land, and provided something to assist in securing or cabling them when landed, she can compel the payment of this wharfage. And the writer of this opinion suggests, that this doubt is greatly increased

Vol. XVIII.—6

where the party lands and draws out his raft upon his own land for his own use, where the city has constructed no wharf, provided no conveniences, exercised no control, but where the defendant himself has prepared the necessary posts for cabling, and done all that was necessary for landing, receiving or delivering his rafts or lumber. That this thought is justified by the charter and amended charter of the city, refer to § 3 of the act of July 14, 1856. Laws, 1856, p. 49.

The city by the charter has the control of the landing on the river, and can build wharves and regulate the landing and wharfage of boats. This power to regulate includes the right, we doubt not, to fix the rate of wharfage, and penalties for a violation of the necessary ordinances. But a wharf implies a structure artificial in its character. A landing without more is not a wharf; certainly not in its primary sense. We would not say that there may not be a landing so sufficient for all needful purposes in its natural state, as to obviate the necessity of further guards or securities. But we suggest that it should be known and designated as a wharf, whether made or existing in its natural state, and that the city should at least provide the means for cabling and securing the crafts and rafts landing at such points, before making the owner of property, which has never been dedicated to the public use, liable for landing and drawing out his lumber thereon.

But we need not pursue the subject further. This much we have deemed not improper, under the circumstances of this case, that the city may be led to adopt such measures as will give her an unquestionable right to this source of revenue. Because defendant was not liable at the time this action was commenced, the raft not having been sold or drawn out, if for no other reason, the judgment is reversed.

                                              Reversed.