■ MOHAWK VALLEY SKI CLUB, INC., Appellant, v TOWN OF DUANESBURG et al., Respondents. [757 NYS2d 357] —Mercure, J.P. Appeal from an order of the Supreme Court (Caruso, J.), entered May 16, 2002 in Schenectady County, which denied plaintiff's motion for summary judgment.

The central issue on this appeal is whether Mariaville Lake in the Town of Duanesburg, Schenectady County, is navigable as a matter of law—as urged by plaintiff—or whether, as defendants contend, there is a question of fact as to its navigability.

Plaintiff is a not-for-profit corporation that formerly provided waterskiing instruction on Mariaville Lake. The lake is an artificial body of water maintained by a concrete dam and spillway, which was constructed in 1920. An initial earthen dam was constructed in a stream bed at the site in approximately 1778. The lake itself is one mile long and one-quarter mile wide; the eastern end is described as a "mud pond." It is divided into two parts by a causeway. In April 2000, defendant Town of Duanesburg passed Local Law No. 1 (2000) of Town of Duanesburg § 3, which bars "any person or persons, corporation, partnership, organization, club or entity of any kind public or private to operate a business or commercial venture upon the waters of Mariaville Lake." Defendant Code Enforcement Officer for the Town denied plaintiff's application for a special use permit to operate its waterskiing school on the ground that Local Law No. 1 permits the Town Board to issue only one or two-day permits per applicant per year allowing commercial use of the lake's waters. Plaintiff thereafter commenced this action, seeking a judgment declaring the lake to be a navigable body of water over which the Town lacks jurisdiction, an order permitting it to operate

its waterskiing school on the waters of the lake and a declaration that Local Law No. 1 is void.[1] Supreme Court denied plaintiff's subsequent motion for summary judgment and deemed defendants' motion for a continuance moot. Plaintiff now appeals.

Restrictions by municipalities on land use are presumptively valid, and will be struck down only if they bear "no substantial relation to the police power objective of promoting the public health, safety, morals or general welfare" (*Trustees of Union Coll. in Town of Schenectady in State of N.Y. v Members of Schenectady City Council*, 91 NY2d 161, 165 [1997]). The state, however, retains jurisdiction over navigable waters and, thus, a town's zoning authority does not extend to those waters (*see Town of Alexandria v MacKnight*, 281 AD2d 945, 945 [2001]; *Erbsland v Vecchiolla*, 35 AD2d 564, 565 [1970], *affd sub nom. Erbsland v Rubin*, 33 NY2d 787 [1973]; *see also* Navigation Law § 30) absent some specific grant of authority from the state (*see e.g.* Navigation Law §§ 46, 46-a).[2] Indeed, even if privately owned, such navigable waters remain subject from the time of the original grant of the state or sovereign to an easement for public travel, i.e., " 'to the right to use the waters for the purposes of a public highway' " (*Douglaston Manor v Bahrakis*, 89 NY2d 472, 481 [1997], quoting *Smith v Odell*, 234 NY 267, 272 [1922]; *see Adirondack League Club v Sierra Club*, 92 NY2d 591, 601 [1998]).

"Navigable waters of the state" are defined as "all lakes, rivers, streams and waters within the boundaries of the state and not privately owned, which are navigable in fact or upon which vessels are operated, except all tidewaters bordering on and lying within the boundaries of Nassau and Suffolk counties" (Navigation Law § 2 [4]).[3] Similarly, at common law, a freshwater river was deemed "navigable-in-fact"—as opposed

---

1. In a related proceeding, Supreme Court issued a permanent injunction prohibiting plaintiff "from operating a water skiing school upon the shores and waters of Mariaville Lake * * * absent a Special Use Permit, or other such required approval from the Town of Duanesburg, or a court order permitting such operation." No appeal was taken therefrom. Inasmuch as that order expressly contemplates further judicial review and, in any event, that proceeding involved alleged violations of a different provision of the Town's zoning laws, the order does not act as a bar to our review of the validity of Local Law No. 1.

2. Contrary to the Town's argument, the prohibition on all commercial ventures contained in Local Law No. 1 is not within the purview of the delegation in Navigation Law §§ 46 and 46-a, which relates to the creation of a vessel regulation zone.

3. "Navigable in fact" is defined as "navigable in its natural or unimproved condition, affording a channel for useful commerce of a

to "navigable-in-law," a term referring to tidal waters (*see Douglaston Manor v Bahrakis, supra* at 480)—if "boats, lighters or rafts may be floated [on it] to market * * * [or if it] is capable, in its natural state and its ordinary volume of water, of transporting, in a condition fit for market, the products of the forests or mines, or of the tillage of the soil upon its banks" (*Morgan v King*, 35 NY 454, 458-459 [1866]). Thus, for instance, a river or stream was deemed to be navigable in fact if it could float logs and timber in single pieces to market, regardless of whether it could float vessels (*see id.* at 459). The critical test instead was whether the river was "so far navigable or floatable, in its natural state and its ordinary capacity, as to be of public use in the transportation of property" (*id.* at 459).

More recently, the Court of Appeals reaffirmed the rule set forth in *Morgan*, stating that "the central premise of the common-law rule remains the same—in order to be navigable-in-fact, a river must provide practical utility to the public as a means for transportation" (*Adirondack League Club v Sierra Club, supra* at 603). The Court further explained that "[t]he standard requires that navigability be determined by the river 'in its natural state and its ordinary volume' " (*id.* at 605, quoting *Morgan v King, supra* at 459). The Court concluded that in light of more modern attitudes about use of natural resources, recreational use should be considered in addition to commercial use in determining navigability (*see Adirondack League Club v Sierra Club, supra* at 603-604). The Court emphasized, however, that the "paramount concern is the capacity of the river for transport, whether for trade or travel" (*id.* at 603).

In accordance with this emphasis on capacity for transport, courts have long considered the presence and nature of termini by which the public may enter or leave the waterway in determining whether a freshwater lake or pond is navigable (*see e.g. Granger v City of Canandaigua*, 257 NY 126, 129 [1931]; *Calkins v Hart*, 219 NY 145, 146, 149 [1916]; *Mix v Tice*, 164 Misc 261, 266 [1937]; *see generally* Humbach, *Public Rights in the Navigable Streams of New York*, 6 Pace Envtl L Rev 461, 517-518). As this Court has explained, the absence of multiple points of access can be "evidence that [a] pond is not suitable for trade, commerce or travel" (*Hanigan v State of New York*, 213 AD2d 80, 85 [1995]). In *Hanigan*, we observed that the claimed recreational use of a pond was a relevant consideration in determining navigability (*id.* at 84). Where,

---

substantial and permanent character conducted in the customary mode of trade and travel on water * * * [and] hav[ing] practical usefulness to the public as a highway for transportation" (Navigation Law § 2 [5]).

however, there was no evidence of any historical use of the pond for commercial purposes and the small boats and canoes that used the pond traveled nowhere, "[t]he mere fact that a small pond, with no navigable inlet or outlet, has been used to float canoes and small boats for purely recreational purposes is * * * insufficient to demonstrate that the pond has any capacity or suitability for commercial transportation" (*id.* at 84).

Similarly, here, plaintiff would have us hold that evidence of the mere presence of motorized vessels on Mariaville Lake is sufficient to deem that lake navigable under the plain language of Navigation Law § 2 (4) and, thus, divest the Town of zoning authority. Such a holding, however, would conflict with the repeatedly upheld requirement that a navigable body of freshwater be capable of supporting transportation. There is no indication in the statute that the Legislature intended to alter this long-established rule affecting both property rights and the scope of this State's jurisdiction (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 153). We conclude that plaintiff's evidence, in the absence of a demonstration of suitable public access or termini, does not establish that Mariaville Lake "provide[s] practical utility to the public as a means for transportation" (*Adirondack League Club v Sierra Club*, 92 NY2d 591, 603 [1998], *supra*). Moreover, plaintiff has failed to demonstrate the extent of public access to the lake, the historical use of the lake by the general public and whether the lake was navigable in its natural state. Thus, plaintiff failed to make a prima facie showing of navigability as a matter of law and Supreme Court properly denied its motion.[4]

We have considered the parties' remaining arguments and have found them meritless.

Spain, Carpinello, Rose and Lahtinen, JJ., concur. Ordered that the order is affirmed, with costs.

---

4. Although we recognize that, where warranted, this Court has the power to search the record and grant summary judgment to a nonappealing party even in the absence of a cross motion (*see* CPLR 3212 [b]), we conclude that defendants failed to demonstrate their entitlement to summary judgment here.