# IN THE SUPREME COURT OF IOWA

No. 12–0335

Filed April 26, 2013

**CITY OF OKOBOJI, IOWA,**

Appellee,

vs.

**LEO PARKS, JR.** and **OKOBOJI BARZ, INC.**
d/b/a **OKOBOJI BOAT WORKS, FISH HOUSE LOUNGE**
and **CLUCKER'S BROASTED CHICKEN,**

Appellants.

---

Appeal from the Iowa District Court for Dickinson County, Patrick M. Carr, Judge.


Appellant challenges the district court's entry of an injunction. **AFFIRMED AS MODIFIED.**


Sean J. Barry and Richard J. Barry of Montgomery, Barry, Bovee & Barry, Spencer, for appellants.


Michael J. Chozen, Spirit Lake, for appellee.

**APPEL, Justice.**

In this case, we again consider issues surrounding the efforts of the City of Okoboji to enforce zoning restrictions on a property located on the shore of West Lake Okoboji. The lakefront property is zoned residential, but has been historically operated as a marina pursuant to special-use permits allowing nonconforming use. We have previously held that while the use of the property as a marina is lawful under the special-use permits, they do not allow an expansion of use that includes on-premises consumption of alcohol with live entertainment, karaoke, hog roasts, and full-moon parties. *City of Okoboji v. Okoboji Barz, Inc.* (*City of Okoboji I*), 717 N.W.2d 310, 315–16 (Iowa 2006). After the district court, on remand from our decision in *City of Okoboji I*, entered a narrow injunction limiting relief to denial of a city liquor license, we held in a certiorari proceeding that the district court erred in not giving the City broader relief and remanded the case again. *City of Okoboji v. Iowa Dist. Ct.* (*City of Okoboji II*), 744 N.W.2d 327, 332 (Iowa 2008).

Undeterred, the owner of the property now seeks to operate a bar on a structure called the Fish House Lounge, which, while generally moored to the marina's "seawall," is capable of getting underway on the lake. The Fish House Lounge has a class "D" liquor license from the state. The City objected to the operation of the Fish House Lounge as contrary to our holdings in *City of Okoboji I* and *City of Okoboji II* and sought declaratory and injunctive relief. The district court ruled that the arrangement amounted to a nonconforming use of the property in violation of the City's zoning regulations. The court entered an injunction prohibiting use of the marina property to provide parking, access to or from, and supporting services, including bathroom facilities, to patrons of a boat, vessel, or structure on which alcohol is served or

upon which entertainment, music, karaoke, abandon-ship parties, or howl-at-the-moon parties are provided. The injunction further prohibited the selling or serving of alcohol, wine, and beer on any boat or structure moored to or attached to the marina and on or from any boat or structure attached to a dock extending from the premises.

The property owner appeals. We now affirm the district court as modified below.

## I. Factual and Procedural Background.

The factual background of this dispute has already been set forth in *City of Okoboji I* and *City of Okoboji II*. Historically, two marinas, the Cove and Okoboji Boats, were located on the lakeshore of West Lake Okoboji. In 1972, the City of Okoboji enacted a zoning ordinance. The properties where the marinas were located were zoned lakeshore residential. Section 2(A) of article VII of the ordinance dictates that single-family dwellings are the only permitted principal uses of lakeshore residential property. Okoboji Zoning Ordinance art. VII, § 2(A) (2006) (originally codified in 1972). In addition, section 2(B)(2) of article VII prohibits use of property in a lakeshore residential district as an entry point for commercial access. *Id.* § 2(B)(2). In 1973, the properties received special-use permits that grandfathered in then-existing operations as nonconforming uses under the ordinance. In 1975, the two marinas merged into a single marina known as Okoboji Boat Works.

Leo Parks, Jr., purchased Okoboji Boat Works in 2001.[1] As part of a remodeling effort, Parks sought to build a bar on the marina property that would serve on-site liquor. The City denied Parks's request for a

---

[1]The defendants in this action are Parks and Okoboji Barz, Inc. d/b/a Okoboji Boat Works, Fish House Lounge and Clucker's Broasted Chicken. Throughout this opinion, we collectively refer to the defendants as "Parks."

class "C" commercial liquor license, stating that "operation of a tavern/restaurant on premises represents a substantial change in the nature and character of the use permitted under the special use permit." *City of Okoboji I*, 717 N.W.2d at 313. When Parks appealed the City's denial to the alcoholic beverages division of the Iowa Department of Commerce, the City filed an action seeking temporary and permanent injunctive relief against operation of a tavern as a nonconforming use. *Id.* The district court denied the City relief, and the City appealed. *Id.*

On appeal, we reversed the judgment of the district court and remanded the case to the district court for entry of a permanent injunction prohibiting the use of the property as a bar. *Id.* at 317. We noted that Parks intended to operate his bar for long hours and to host activities such as karaoke, live music, hog roasting, and monthly full-moon parties. *Id.* at 316. We held that such activity changes the nature and character of the nonconforming use. *Id.* As a result, we held Parks's proposal to operate a full-fledged bar could not be considered an accessory use to the operation of the marina. *Id.*

On remand, the City asked the district court to enter an injunction prohibiting both the operation of the bar and use of the marina for live music, karaoke, hog roasts, and full-moon parties. *City of Okoboji II*, 744 N.W.2d at 329–30. The district court entered an injunction that only prohibited Parks from selling alcoholic beverages for on-premises consumption, thus prohibiting him from obtaining a class "C" liquor license. *Id.* at 330. The City sought a writ of certiorari, arguing that under the district court's order, Parks could sell packaged beer and wine to patrons and maintain a bar-like atmosphere on the premises. *Id.*

In *City of Okoboji II*, we sustained the writ and held the narrow district court order fell short of our mandate in *City of Okoboji I*. *Id.* at

333. We emphasized that our opinion in *City of Okoboji I* was based on the expanded activities associated with the proposed bar and not on the method of licensing. *Id.* at 332. We stated, "[T]he injunction must prohibit the activity of operating a bar under the circumstances proposed without regard to the manner alcoholic beverages would be sold or consumed." *Id.*

Twenty-five days prior to the issuance of our *City of Okoboji I* opinion, Parks began implementing an alternate legal strategy. Parks obtained a class "D" liquor license from the alcoholic beverages division of the Iowa Department of Commerce for an excursion boat, the Fish House Lounge. The Fish House Lounge is a thirty-by-forty-foot structure on pontoons. Parks obtained the class "D" liquor license for the Fish House Lounge from the state, and not the City, based upon the state's control of the lake bed. Later applications for a state liquor license requested licensing for additional excursion boats.

In February 2010, after the Fish House Lounge had been in operation for a period of time, the City brought a second action seeking declaratory and injunctive relief. The district court granted the City relief. The district court found that the Fish House Lounge cannot cruise the lake during winter months, has no regular cruise schedule, and is rarely seen cruising the lake. It found that though the Fish House Lounge has small restroom facilities, patrons are asked to use the restroom facilities on the marina property. The district court further found that the Fish House Lounge presents live and recorded entertainment to patrons, hosts theme parties, karaoke, and other activities as outlined in *City of Okoboji I* and *City of Okoboji II*, and operates as late as midnight. The district court concluded Parks was engaged in the very activities prohibited by this court in *City of Okoboji I*

and *City of Okoboji II*, but had simply moved the activities a few feet west onto the Fish House Lounge.

As a result of these factual findings, the district court concluded that the use of the Okoboji Boat Works property to provide ingress and egress to and from a bar, to provide motor vehicle parking for patrons of a bar, and to provide restroom facilities to patrons of a bar constituted an unlawful expansion of the preexisting nonconforming use. The district court further held that Iowa Code section 414.20 authorizes the issuance of an injunction and that the failure to enter an injunction would effectively sanction conduct that the City's ordinance prohibits.

In light of its findings of fact and legal conclusions, the district court entered an injunction prohibiting Parks from:

> 1. Using the premises described in Exhibit 1[2] . . . to provide access to or from, provide parking for persons seeking access to or from, or provide supporting services including bathroom facilities to patrons of, any boat, vessel or structure on which alcohol is sold and consumed or on which entertainment, music, karaoke, abandon ship parties, or howl at the moon parties are provided, while such boat, vessel or structure is moored or otherwise attached to a dock extending from or attached to the said premises; and
>
> 2. From selling or serving alcohol, wine or beer, from providing entertainment, music, karaoke, abandon ship parties and howl at the moon parties, on or from any boat or other structure which is moored or attached to the premises described in Exhibit 1 . . . or on or from any boat or other structure which is moored or attached to a dock extending from said premises.

The district court declined the City's request to enjoin Parks from providing access to or from a boat or vessel on which alcohol is sold and consumed within three hundred feet of the marina.

Parks appeals.

---

[2]Exhibit 1 refers to the legal description of Parks's property, which the City attached to its petition.

## II. Standard of Review.

A request for an injunction invokes the district court's equitable jurisdiction. Iowa R. Civ. P. 1.1501. We review the district court's order issuing a permanent injunction de novo. *Opat v. Ludeking*, 666 N.W.2d 597, 603 (Iowa 2003). "Although the trial court's factual findings are not binding" in an action seeking an injunction, "we give weight to the court's assessment of the credibility of the witnesses." *Id.*

## III. Discussion.

## A. Introduction: Nonconforming Marinas in Residential Areas.

Because the use of land adjoining lakes as marinas often predates city zoning ordinances, nonconforming marinas are common in lakeside residential districts. 3 Patricia E. Salkin, *American Law of Zoning* § 18.53, at 18-143 (5th ed. 2012) [hereinafter Salkin]. As a general rule, the established nonconforming use may not be extended. *Id.* at 18-144. On the other hand, a mere intensification of use by the addition of more boats at a marina is unlikely to be regarded as an impermissible extension. *Id.*

Whether new activities on marina property amount to an impermissible extension of use or a permitted intensification of use is often a matter of judgment. We made that judgment with respect to the operation of a bar with extended hours and various forms of entertainment in *City of Okoboji I* and *City of Okoboji II.* The question before us now is whether our prior rulings can be avoided by moving the locus of prohibited activity onto a floating pontoon structure that is located above the state-owned lake bed and outside the geographic boundaries of the City, but which utilizes the upland marina property for ingress, egress, parking, and restroom facilities.

**B. Positions of the Parties.** Parks's broadest challenge to the district court's order on appeal arises from the state's ownership of the lake bed of West Lake Okoboji. *See State v. Sorensen*, 436 N.W.2d 358, 361–62 (Iowa 1989) (noting state holds title to navigable waters in its sovereign capacity as a public trust); *Peck v. Alfred Olsen Constr. Co.*, 216 Iowa 519, 522, 245 N.W. 131, 132–33 (1932) (same). Parks asserts the City has no zoning authority over the lake bed because the state owns the lake bed of West Lake Okoboji in its sovereign capacity. *See Mohawk Valley Ski Club, Inc. v. Town of Duanesburg*, 757 N.Y.S.2d 357, 359 (App. Div. 2003) (indicating state title to navigable waters prevents local exercise of zoning authority over underwater lands), *abrogated on other grounds by Town of North Elba v. Grimditch*, 948 N.Y.S.2d 137, 146 (App. Div. 2012) (holding Lake Placid is not a navigable water subject to the public trust doctrine). Because the Fish House Lounge is floating over the lake bed when it is moored to the marina's seawall, Parks concludes the City cannot seek to regulate activities occurring on the Fish House Lounge through its zoning power.

In the alternative, Parks claims that under various statutes other state agencies are responsible for regulation of lake bed activities. *See* Iowa Code § 455A.2 (2009) ("A department of natural resources is created, which has the primary responsibility for . . . managing . . . land and water resources in this state."); *id.* § 461A.3 ("The [natural resource] commission shall have the power to maintain, improve or beautify state-owned bodies of water, and to provide proper public access thereto."); *id.* § 461A.4(1)(*a*) ("A person shall not construct a structure including but not limited to a pier [or] wharf . . . upon or over any state-owned or state-managed land or water under the jurisdiction of the commission without first obtaining from the commission a written permit."); *id.* § 461A.4(2)

("A person shall not operate a commercial concession in a . . . recreation area under the jurisdiction of the department without first entering into a written contract with the department."); *id.* § 461A.18 ("Jurisdiction over all meandered streams and lakes of this state . . . is conferred upon the commission."). Parks asserts that under these statutes, the state has reserved the exclusive power to regulate all activities over the lake bed, such as those occurring on the Fish House Lounge. Although Parks does not use the term, he is essentially claiming that whatever zoning authority the City might have over the Fish House Lounge's activities is preempted by state statutes. *Cf. Goodell v. Humboldt County*, 575 N.W.2d 486, 492–93 (Iowa 1998) (discussing preemption in the context of a county's home rule authority).

In addition to the state sovereignty and statutory preemption arguments, Parks questions whether the City as a matter of local law has the power to assert its zoning authority over the Fish House Lounge. Parks argues the boundary line of the City of Okoboji is the mean high water mark of the lake. Parks claims that because the City has zoning authority only within its geographic area, it does not have zoning authority over the Fish House Lounge, which is located below the mean high water mark when moored to the marina property and is, according to Parks, thus outside the boundary of the City. *See City of Rye v. Boardman*, 171 N.Y.S.2d 885, 887 (Sup. Ct. 1958) (holding underwater land is not within zoning authority of a city when a city zoning map does not include underwater land within the boundary of the municipality).

Even if the City has regulatory authority over the use of the marina's land to support activities on the Fish House Lounge, Parks claims the district court still erred in granting an injunction for multiple reasons. First, Parks claims the Fish House Lounge activities are merely

accessory to the permitted use of operating a marina. *See City of Okoboji v. Okoboji Barz, Inc.* (*City of Okoboji III*), 746 N.W.2d 56, 61–64 (Iowa 2008) (discussing accessory use). Second, Parks claims the City has not shown that injunctive relief is appropriate. While Parks concedes Iowa Code section 414.20 provides authority for enjoining conduct in violation of zoning laws, he points out that such an injunction is not favored and should be "granted with caution and only when clearly required." *See Incorporated City of Dennison v. Clabaugh*, 306 N.W.2d 748, 755 (Iowa 1981). Third, Parks further claims the City has failed to meet its burden in demonstrating a need for injunctive relief under all the facts and circumstances of this case. *See Cmty. State Bank, Nat'l Ass'n v. Cmty. State Bank,* 758 N.W.2d 520, 528 (Iowa 2008) (setting forth factors a party seeking an injunction must establish).

Parks also challenges the scope of the injunction. Parks asserts the injunction is overbroad in that it enjoins Parks from serving liquor on the Fish House Lounge when it is moored to the marina property. Parks further asserts that because he has a liquor license from the state, the injunction conflicts with state law. *See People v. Gray*, 242 N.E.2d 298, 300 (Ill. App. Ct. 1968) (holding an excursion boat owner with a valid state-issued liquor license is not required to also have a county-issued liquor license). Additionally, Parks asserts the extension of the injunction to include other excursion boats was improper because the operations of these boats were not specifically at issue in the underlying litigation.

In response, the City claims it does not seek to regulate activities over the lake bed. Instead, the City argues it only seeks to regulate activities occurring on the upland estate. The City notes that under Iowa Code section 414.1(1), it is "empowered to regulate and restrict the . . .

use of . . . land." The City argues none of the jurisdictional arguments raised by Parks prevent it from regulating the use of the marina's real property located above the mean high water mark of the lake.

The City maintains the use of the real property to support activities occurring on the Fish House Lounge is outside the nonconforming use of marina operations and cannot be considered an accessory use. *See City of Jewell Junction v. Cunningham*, 439 N.W.2d 183, 186 (Iowa 1989). Citing the facts as found by the district court, the City largely reprises prior arguments made in *City of Okoboji I* and *City of Okoboji II*, essentially asserting that a loud, bar-like atmosphere is not an accessory use to the marina as it has operated in the past. Because the loud, bar-type establishment is not an accessory use of the marina property, the City argues, providing ingress, egress, parking, and restroom facilities in support of such activities are not permitted accessory uses even if the activities are located outside the City's zoning jurisdiction.

The City defends the need for an injunction to restrain Fish House Lounge operations. The City cites Iowa Code section 414.20, which provides that when a building or structure is used in violation of a zoning ordinance or regulation, the municipality may bring an action "to prevent" or "abate" the violation or to "prevent any illegal act, conduct, business, or use in or about such premises." The City argues this Code provision creates a clear statutory basis for an injunction in zoning cases. Further, the City points to our opinion in *City of Okoboji II*, where we indicated the legal process relied upon by the City would be essentially undermined without injunctive relief. *City of Okoboji II*, 744 N.W.2d at 332.

With respect to the scope of the injunction, the City argues that requests for equitable relief should be construed liberally. *See Henry*

*Walker Park Ass'n v. Mathews*, 249 Iowa 1246, 1257, 91 N.W.2d 703, 711 (Iowa 1958). The City argued that if the injunction were limited specifically to the Fish House Lounge, Parks would simply transfer the activity to another one of the three large boats owned by Parks.

**C. Jurisdictional Issues.** Parks has raised some interesting jurisdictional issues. His claim that a municipality may not impose zoning regulations above state-owned property held in public trust is supported by New York authority. *See Mohawk Valley Ski Club*, 757 N.Y.S.2d at 359; *Erbsland v. Vecchiolla*, 313 N.Y.S.2d 576, 577–78 (App. Div. 1970).[3] On the other hand, Maryland authorities hold that the zoning power of a municipality may extend over wharfs located above public trust property. *Holiday Point Marina Partners v. Anne Arundel County*, 707 A.2d 829, 836 (Md. 1998); *Peoples Counsel v. Md. Marine Mfg. Co.*, 560 A.2d 32, 35 (Md. 1989); *Harbor Island Marina, Inc. v. Bd. of Cnty. Comm'rs*, 407 A.2d 738, 746–49 (Md. 1979). While the context is different, early Iowa authority suggests that a city may be able to regulate the use of wharves, docks, landings, and wharfage on the Mississippi River. *See City of Dubuque v. Stout*, 32 Iowa 80, 85 (1871); *City of Muscatine v. Hershey*, 18 Iowa 39, 42 (1864).

Similarly, Parks raises preemption questions related to municipal zoning authority with respect to docks and vessels physically located over the lake bed. The statutes Parks cites do not expressly state that local municipalities are prevented from exercising zoning authority with respect to structures over lake beds subject to public trust, but perhaps an argument could be made that such preemption is implied by the

---

[3]Even in New York, however, zoning authority extends to docks and wharfs that are within the scope of the landowner's riparian rights. *See Town of Islip v. Powell*, 358 N.Y.S.2d 985, 992 (Sup. Ct. 1974).

comprehensive nature of the regulatory scheme. *See, e.g., Rapoport v. Zoning Bd. of Appeals*, 19 A.3d 622, 636 (Conn. 2011) (holding, under applicable statutes, that state department of environmental protection has exclusive authority over docks and waterways above the mean high water line unless the city adopts a harbor management plan); *Lakeside Lodge, Inc. v. Town of New London*, 960 A.2d 1268, 1270, 1275 (N.H. 2008) (holding the existence of a comprehensive regulatory scheme governing the design and placement of docks over state-owned waters preempted a town's ordinance limiting privately-owned docks to six users and six boats at any one time). On the other hand, in a number of cases, state statutes have been found not to preempt municipal zoning on waterfronts. *See, e.g., GLA & Assocs., Inc. v. City of Boca Raton*, 855 So. 2d 278, 282–83 (Fla. Dist. Ct. App. 2003) (holding a city's regulation of activities seaward of coastal construction line were valid); *People's Counsel*, 560 A.2d at 36 (noting that a county may regulate riparian improvements to submerged land); *Golden v. Bd. of Selectmen*, 265 N.E.2d 573, 576–77 (Mass. 1970) (permitting a city to regulate the filling, dredging, and excavating of coastal wetlands notwithstanding a state statute that purported to regulate the same activities); *see also Mayor of Annapolis v. Annapolis Waterfront Co.*, 396 A.2d 1080, 1086 (Md. 1979) (holding a state statute granting a city the authority to regulate the construction of wharves did not limit the factors the city could take into account in making those decisions).

Finally, Parks's claim that the City cannot exercise zoning authority outside its boundaries has support in the commentary. *See, e.g.,* 8 Eugene McQuillin, *The Law of Municipal Corporations* § 25:92, at 444 (3d ed. 2010 rev. vol.) [hereinafter McQuillin] ("The zoning power of a municipal corporation usually is limited to its corporate area, and to

such territory beyond its corporate boundaries as may be designated by statute." (footnote omitted)); 1 Salkin § 9:13, at 9-35 ("Where a zoning map shows that the boundary of a district terminates at the shoreline, underwater land beyond the shoreline is not included in the district."). While one authority has noted that it is not uncommon for state legislatures to authorize cities to exercise extraterritorial zoning power, 3 Edward H. Ziegler, *Rathkopf's The Law of Zoning and Planning* § 35:6, at 35-10 (4th ed. 2004) [hereinafter *Rathkopf's*], no such authorization has been cited by the parties here. We have said that the scope of a city's zoning authority should be strictly construed to favor the free use of property and that it will not be extended by implication or interpretation. *City of Okoboji III*, 717 N.W.2d at 314; *Jersild v. Sarcone*, 260 Iowa 288, 296, 149 N.W.2d 179, 185 (1967). In this case, there is no City of Okoboji ordinance expressly authorizing zoning over the lake bed. While there is authority for the proposition that a municipality's zoning authority extends to appurtenances such as docks and wharfs that extend from the upland, *see, e.g., Holiday Point Marina Partners*, 707 A.2d at 836, these cases may not be persuasive where the underwater land is not within a city's boundaries.

While Parks has raised a number of substantial arguments related to the power of the City of Okoboji to zone over the lake bed, his arguments miss the mark. On appeal, the City makes it clear that it does not claim zoning authority over the lake bed structures, which would raise the issues cited by Parks. Instead, the City asserts only that it has authority over the upland real property that is clearly within the city limits. The City claims that the nonconforming use of the real property owned by Parks on the lakeshore is limited to marina operations and that the use of the real property for ingress and egress to the Fish

House Lounge, to provide parking for patrons of the Fish House Lounge, and to provide restroom facilities for patrons of the Fish House Lounge is inconsistent with the preexisting nonconforming use.

In light of the City's disclaimer of authority to zone over the lake bed, we consider only whether the City has shown that it is entitled to injunctive relief because the use of the upland real property owned by Parks is inconsistent with its prior nonconforming use and does not amount to an accessory or incidental use.

**D. Accessory Use of Upland Marina Property.**  Parks asserts that because the use of excursion boats is a valid operation of a marina and permitted under the special-use permits, the sale of alcohol on the excursion boats and the related activities he seeks to promote is a permitted reasonable and accessory use.  Parks argues that accessory uses are permitted because it is impossible to foresee or describe every lawful use of property.  *See City of Okoboji III*, 746 N.W.2d at 61.

In *City of Okoboji I*, we held that activities similar to those now conducted at the Fish House Lounge could not be considered "merely an accessory use to the operation of the marina."  717 N.W.2d at 316.  We concluded the use of the marina for various activities associated with the sale of alcoholic beverages "change[s] the nature and character of the non-conforming use" existing prior to the enactment of the City's zoning ordinance in 1972.  *Id.*

Parks has moved the location of the bar itself a few feet from dry land to the floating Fish House Lounge moored to the seawall at the marina.  The fact remains, however, that Parks proposes to use real property within the city limits to support an expansion of activities associated with the marina by providing ingress, egress, parking, and restroom facilities to what amounts to a floating bar.  The use of upland

for access or as an accessory use in contravention of zoning regulations to support activities on lands lying underwater amounts to a zoning violation. *Cf.* 3 *Rathkopf's* § 35:5, at 35-8 ("If the upland were in a residentially zoned district, use thereof for access to and as accessory to a commercial use of the lands lying under water would constitute a violation of residential restrictions.").

We see no basis to walk back our prior cases involving Parks and the City of Okoboji. Based on our review of the record, we conclude the City has shown a use of the property that exceeds the scope of the prior nonconforming use allowed under the special-use permits. Prior to 1972, the property was used for operating marinas. The marinas were open between 8:00 a.m. and 5:00 p.m., with the gas dock occasionally staffed until 8:00 p.m. As the district court noted, there was no evidence that, prior to 1972 when the City enacted its zoning ordinance, the property was used to provide nearly permanent mooring for a liquor establishment, to provide restroom facilities for patrons of such an establishment, or to provide parking for such use. Since 2008, however, the marina property has been providing access to a floating bar that stays open at night. There has been an increase in traffic, crowded parking, noise, and other activities often associated with bar operations. While it is true that the main platform upon which liquor is sold and loud activities occur is above the lake bed, it is obvious the activities of the Fish House Lounge are inextricably intertwined with the use of the real property subject to the City's zoning restrictions. The use of the property for ingress and egress, for restroom facilities, and for parking to a floating bar moored at the marina are not accessory uses to the valid, nonconforming use of the marina. These uses of the upland real estate are also in violation of section 2(B)(2) of article VII of the City's zoning

ordinance, which prohibits such lakeshore lots from being used for access to commercial activities.

**E. Propriety of Injunctive Relief.** We also conclude that the City has met its burden of showing the need for injunctive relief. We recognize that we have applied common law factors in determining the propriety of an injunction to enforce a zoning ordinance. *See, e.g., Cmty. State Bank,* 758 N.W.2d at 528. A plaintiff seeking permanent injunctive relief must establish " '(1) an invasion or threatened invasion of a right; (2) that substantial injury or damages will result unless the request for an injunction is granted; and (3) that there is no adequate legal remedy available' " (quoting *Sear v. Clayton Cnty. Zoning Bd. of Adjustment,* 590 N.W.2d 512, 515 (Iowa 1999)). Applying the common law factors, the course of this litigation demonstrates the need for an injunction in order to provide an adequate remedy to ensure enforcement of the ordinance. The use of the marina to support the activities of the Fish House Lounge through providing access, parking, and restroom facilities has had an adverse impact on the residential character of the waterfront. Under the circumstances, we have no difficulty concluding that an injunction was necessary to ensure effective enforcement of the ordinance. *See* 8A McQuillin § 25:383, at 1188–92 (injunctive relief available to restrain violations of zoning ordinances where the violation of zoning ordinance is continuing in nature).

We further agree with the City that it is entitled to injunctive relief with respect not to just the Fish House Lounge, but to other excursion boats that might use the property. As noted in *Henry Walker Park Ass'n,* 249 Iowa at 1257, 91 N.W.2d at 711, prayers for general relief are to be construed liberally. Under a prayer for general relief, a court may grant relief "consistent with the pleadings and the evidence." *Id.* at 1258, 91

N.W.2d at 711. Any relief granted, however, must also be such "as will not surprise the opposing party." *Jorge Constr. Co. v. Weigel Excavating & Grading Co.*, 343 N.W.2d 439, 442 (Iowa 1984).

In this case, we find that the relief granted over potential use of the upland to support other excursion boats was well within the authority of the district court in light of the pleadings and evidence. The City requested that Parks be restrained from providing "access to and/or from boats(s) or vessel(s) on which alcohol is sold and consumed and on which entertainment, music, karaoke, abandon-ship parties, and howl-at-the-moon parties are provided while moored to the subject premises or to dock(s) extending from the subject premises, including the Fish House Lounge." Further, the record in this case shows that Parks owns three large boats. We conclude that the granting of an injunction covering boats other than the Fish House Lounge was consistent with the pleadings and evidence and did not come as a surprise to Parks. *See Jorge Constr. Co.*, 343 N.W.2d at 442; *Henry Walker Park Ass'n*, 249 Iowa at 1257, 91 N.W.2d at 711. Given the posture of the litigation, it would make little sense to enjoin access, parking, and restroom facility use with respect to activities on the Fish House Lounge only, but to allow Parks to simply transfer the activities to another boat free from restraint. To ensure that the injunction was commensurate with the relief requested, and to close a potential loophole, the district court acted within its authority when it sculpted the injunctive relief to include other excursion boats owned by Parks.

We disagree with the district court in one respect. Because the City does not assert its zoning authority over docks on the lake bed, we conclude that the injunction should not enjoin the provision of or sale of liquor on boats when moored at the docks as compared to those moored

directly to the shoreline. Of course, this distinction makes little difference as the City has shown entitlement to an injunction that prohibits Parks from using the upland to provide ingress, egress, parking, or restroom facilities to patrons of boats or similar vessels selling alcohol or engaging in bar-type activities while docked at the marina. Because the issue has not been joined on appeal, we leave for another day whether or under what circumstances the City may assert direct zoning authority over docks extending onto the lake.

## IV. Conclusion.

For the above reasons, we affirm the district court's order granting an injunction in this case. On remand, however, the district court should modify its injunction to prohibit the nonaccessory activities solely on the land within the geographic boundaries of the City.

**AFFIRMED AS MODIFIED.**