# IN THE COURT OF APPEALS OF IOWA

No. 23-0260
Filed January 10, 2024

**DENNIS A. BINNEBOESE, STEPHEN P. BINNEBOESE, LYNN M. MORGAN, MARK J. BINNEBOESE, LISA S. LOVEJOY, and TERRIE R. BINNEBOESE,**
    Plaintiffs-Appellants,

**vs.**

**JAMES D. BINNEBOESE,**
    Defendant-Appellee.

_____

**JAMES D. BINNEBOESE,**
    Third-Party Plaintiff,

**vs.**

**BINNEBOESE FAMILY FARMS PARTNERSHIP,**
    Third-Party Defendant.

_____

Appeal from the Iowa District Court for Plymouth County, Patrick H. Tott, Judge.

Siblings appeal rulings in litigation over their brother's exercise of an option to purchase farmland in their mother's will. **AFFIRMED AND REMANDED WITH DIRECTIONS.**

David C. Briese of Crary, Huff, Ringgenberg, Hartnett & Storm, P.C., Sioux City, for appellants.

Angie J. Schneiderman of Moore, Corbett, Moeller & Meis, L.L.P., Sioux City, for appellee.

Heard by Bower, C.J., and Tabor and Chicchelly, JJ.

**TABOR, Judge.**

This case is about two things: skyrocketing land values and the intent of testators Eugene and Mildred Binneboese that their son James have the chance to continue farming the family's nearly 400 acres in Plymouth County. Their wills devised the real estate to their six children and included an option for James to purchase the farmland at fair market value. He exercised that option in July 2020. But when James and his five siblings couldn't agree on the fair market value, the siblings filed an action for declaratory judgment. The court denied the siblings' second and third motions to amend their petition. It then granted partial summary judgment for James, invoking the doctrine of equitable conversion and determining the fair market value at the date he exercised his option. The court also credited the rent that James paid during the litigation toward the purchase price, calculated the interest that accrued, and ordered the siblings and their spouses to convey marketable title.

The siblings now appeal, arguing the court improperly (1) denied their motions to amend, (2) applied the equitable-conversion doctrine, and (3) credited the rent, calculated interest, and conveyed marketable title that included their spouses. Finding no abuse of discretion, we affirm the orders denying the motions to amend. Finding the court properly relied on equitable conversion, we affirm the partial summary judgment for James. And because the court's treatment of the rent and interest was proper, we affirm those rulings. But because the district court ordered the siblings and their spouses—who were not joined as parties to the action—to convey marketable title, we remand with instructions for the district court to address that issue.

## I.     Facts and Prior Proceedings

James has been farming the family's land for more than four decades. Meanwhile, his three brothers—Dennis, Stephen, and Mark Binneboese—and his two sisters—Lynn Morgan and Lisa Lovejoy—pursued careers off the farm.[1]  In nearly identical wills, their parents, Eugene and Mildred, conveyed the land to their six children.  The parents also granted James an option to purchase the real estate at fair market value no later than five years after the death of the last surviving parent.  Eugene died in 1998; Mildred died in 2016.  Mildred's will states:[2]

> **SECOND**
> I give all of my real estate to my children Dennis A. Binneboese, Stephen P. Binneboese, Lynn M. Morgan, Mark J. Binneboese, Lisa S. Lovejoy and James D. Binneboese, equally, per stirpes, subject to a life estate which I give to my husband A. Eugene Binneboese, and subject to the options in clause THIRD of this will.
> **THIRD**
> Upon the death of my husband A. Eugene Binneboese or if A. Eugene Binneboese does not survive me, **I give to my son James D. Binneboese the option to purchase at fair market value any of my farm real estate, said option to be exercised in writing within five (5) years from the date of death of my husband or if my husband does not survive me within five (5) years from my death.**  If the option is exercised the purchase may be made upon the following terms:
> Down payment of 20% of the purchase price, and the balance to be paid in  accordance with a five (5) year real estate contract providing for annual principal payments of 3% of the balance following the down payment, **plus interest payments at the rate set for the last sale of five (5) year U.S. Treasury Notes prior to the date of the contract, and the interest rate shall remain fixed and not changed for the term of the contract.**  All balances, principal, and interest, shall be due and payable five (5) years from the date of possession as stated in the contract.[3]

---

[1] For clarity and efficiency, we will refer to anyone with the last name Binneboese by their first name.  We will refer to the appellants as "the siblings."
[2] We have bolded the key parts of the will excerpt.
[3] The will describes the land as three parcels in Plymouth County.

Since Mildred's death, the farm has been deeded to the siblings. James leased the property from the Binneboese Family Farms Partnership starting in March 2017.[4] He paid $250 per acre in rent. In July 2020, James sent a letter to his siblings exercising his option to buy. The letter, signed by his attorney, stated:

> You and each of you are hereby given notice that James D. Binneboese does hereby exercise the option granted to him in the Last Will and Testament of [his parents] to purchase the real estate in Plymouth County, Iowa . . . .
>
> . . . .
> I would request that you contact me to discuss how we should proceed to determine the fair market value of these properties.

To determine that fair market value, in December 2020, the siblings obtained an appraisal setting the property's value at $4,594,590 (an average of $11,486.48 per acre) from auctioneer Bruce Brock and provided it to James. James then offered $9,200 per acre. The siblings countered with $10,600 per acre, and James raised his offer to $9,550 per acre. In March 2021, counsel for James sent a letter to the siblings noting that "efforts to agree upon terms of his option to purchase the farm which was owned by your parents have not succeeded." The attorney suggested either litigation or mediation to determine the fair market value.

In April 2021, the siblings obtained an appraisal from Daniel Comes of Midwestern Land and Auction. Comes believed the Binneboese farm was then worth $4,959,200 (an average of $12,435 per acre).[5] But James rejected that

---

[4] The court determined in its final order that the Binneboese Family Farms Partnership "holds no title interest to the real estate."

[5] Comes testified that "farmland values have increased significantly since 2020"— in some cases by thirty to forty percent.

valuation, contending that fair market value should be assessed as of July 2020 when he exercised the option to purchase.

The siblings and James never agreed upon the fair market value.[6] So the siblings petitioned the district court for declaratory judgment in August 2021. They asserted that the parties were "ready, willing, and able to enter a purchase contract" for the farm real estate and wanted the court to declare "the rights, status, and other legal relations of [the siblings] and [James]." They asked the court to (1) declare that James had exercised his option to purchase the farm, (2) determine the real estate's fair market value and the contract terms, and (3) require James to specifically perform under those terms as determined by the court.

Early on, the siblings moved to amend their petition, adding Stephen's wife, Terrie, as a plaintiff.[7] The court granted it. A few months later, the siblings moved to amend again. The second amended petition asked the court to declare that the provision in their mother's will concerning the purchase price at fair market value was "indefinite, uncertain, and incomplete." The siblings also moved to include a count pled in the alternative seeking a declaratory ruling that James's "inequitable conduct and unnecessary delay has caused [him] to be unjustly enriched and thus, [his] exercise of his purported option is unenforceable." The siblings added that if the court denied the first two requests, it should determine fair market value as of the date of the real estate contract. The court denied the siblings' second motion

---

[6] As land prices continued to rise, in November 2021, the siblings obtained a broker's opinion from Midwestern Land & Auction that the fair market value of the farm real estate was $6,513,000. To counter that amount, James obtained a report from Uniform Rural Appraisal Report in January 2022, setting fair market value of the farm at $3,855,200 (an average of $9,693.70 per acre) effective July 2020.

[7] Stephen deeded half of his interest in the farmland to Terrie in 2018.

to amend because counts one and two were "diametrically opposed" to the original petition and count three was pleaded in the alternative, contradicting the original claims. Further, significant discovery would be needed with five weeks left in the case and would significantly prejudice James. The siblings filed a third request to amend, but the court found it was almost identical to their second request and denied it for the same reasons.

The siblings and James both moved for partial summary judgment. The court denied the siblings' motion and granted James's cross motion. The court applied the doctrine of equitable conversion in deciding that fair market value should be determined as of July 2020.[8] The court ruled that James should receive credit for the $93,625 in rent he paid in 2021 and the $46,812.50 paid in 2022. After calculating the interest due, the court set the purchase price at $4,089,179.37 as of January 30, 2023. The court ordered that the warranty deed should be issued to James from the siblings and their spouses.

The siblings appeal.

## II. Scope and Standards of Review

We will reverse the district court's denial of the siblings' motions to amend their petition only if they show "a clear abuse of discretion." *Daniels v. Holtz*, 794 N.W.2d 813, 817 (Iowa 2010). An abuse occurs when the court "exercises its discretion 'on grounds clearly untenable, or to an extent, clearly unreasonable.'" *In re Est. of Roethler*, 801 N.W.2d 833, 837 (Iowa 2011) (citation omitted).

---

[8] The court found that the Comes appraisal of $4,594,590 was too high, but the Uniform Rural Appraisal Report appraisal of $3,855,200 was a "bit too low" and set the actual fair market value as of July 31, 2020, at $4,153,400.

We review declaratory judgments according to the nature of the underlying action. *Cent. Bank & Real Est. Owned, L.L.C. v. Hogan*, 891 N.W.2d 197, 199 (Iowa 2017) (reviewing summary judgment granted in declaratory action for corrections of legal error). When equitable doctrines are involved, as here, our review is de novo. *Passehl Est. v. Passehl*, 712 N.W.2d 408, 414 (Iowa 2006). In a de novo review, we give weight to the district court's factual findings, but we are not bound by them. *Roethler*, 801 N.W.2d at 837.

## III. Analysis

### A. Denying Petitions to Amend

The siblings contend that the court erred in denying their second and third motions to amend their petition.[9] In considering the second amendment, the court described the original petition as "asking what the price should be" and what was the effective date of the valuation. In contrast, the amended petition was "looking for a ruling saying, well, there is no right to buy so the purchase price and the timing is immaterial." The court asked: "How does that not diametrically switch the issues by 180 degrees?" Counsel for the siblings responded that they were just "interpreting the will."

In denying the amendments, the court found that the first two claims in the new complaint were "diametrically opposed" to the position the siblings took in their

---

[9] James contends the siblings waived error on their motions to amend by proceeding with their motion for partial summary judgment. We disagree. The siblings moved to amend and received rulings from the district court. Those steps were enough to preserve error. *See Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012) ("This is not one of those cases where the court failed to mention the issue.").

original petition. The court also found that a "discovery window" of five weeks was too narrow for James to prepare under the proposed amendments.

Motions to amend are governed by Iowa Rule of Civil Procedure 1.402(4):

> A party may amend a pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise, a party may amend a pleading only by leave of court or by written consent of the adverse party. Leave to amend, including leave to amend to conform to the proof, shall be freely given when justice so requires.

Since the siblings did not have James's consent to amend their petition, their only path forward was to seek leave from the court. The siblings emphasize that "amendments are the rule and denials are the exception." *See Bremicker v. MCI Telecomms. Corp.*, 420 N.W.2d 427, 429 (Iowa 1988). While true, amendments "should not be allowed after a responsive pleading has been filed, if the pleading substantially changes the issues" for trial, especially if those issues unfairly prejudice the defendant. *Id.*

We find the court's denial reasonable here. For one, the proposed amendments substantially transformed the issues for trial. In the original petition, the siblings requested specific performance of the purchase option. The only question was how to compute fair market value. But just over one month before trial, the siblings suggested that the purchase option was unenforceable and the will provisions were invalid. The sibling's new positions would force James to re-strategize his case. Thus, these proposed amendments put James at a severe disadvantage. *See Stewart v. Iowa Mach. & Supply Co.*, No. 08–0411, 2009 WL 1708838, at *4 (Iowa Ct. App. June 17, 2009) (finding no abuse of discretion

considering discovery faced by defendants if the amendment were granted). Thus, we affirm the district court's orders denying the amendments.

**B. Applying Doctrine of Equitable Conversion**

We move next to the siblings' claim that the court erred in granting partial summary judgment for James through the doctrine of equitable conversion.[10] The siblings argue that "there was no positive direction to sell, no absolute necessity to sell, or a blending of realty and personalty by the testators in the Wills." They contend that "[i]n this case, Eugene and Mildred did not enter into any contract to sell real estate prior to their death." And that "[e]quitable conversion is simply not applicable here because there is no contract" as "[t]he terms of the potential sale to James are too indefinite and uncertain to form a valid contract."[11]

We disagree with the siblings' contention. Their original petition conceded James had a valid option to purchase under their parents' wills. The court's only duty was to designate the date for deciding fair market value. The siblings

---

[10]    What is an equitable conversion? . . . [It] is defined as a constructive alteration in the nature of property by which in equity real estate is regarded as personalty or personal estate as realty. It grows out of the old equitable maxim that "equity regards that done which ought to be done."

*In re Est. of Schwertley*, 293 N.W. 445, 447 (Iowa 1940) (internal quotation marks and citation omitted); *see also Equitable Conversion*, Black's Law Dictionary (11th ed. 2019). And "nothing is better established than the equitable principle that land directed to be sold and turned into money is to be considered as that species of property into which it is directed to be converted and this is especially so where the direction is made in a will." *In re Est. of Jackson*, 252 N.W. 775, 777 (Iowa 1934).

[11] The district court invoked equitable conversion and assumed both parties agreed there was a valid option to purchase but just couldn't agree on when fair market value should be determined. Yet the siblings' contention on appeal that there was no contract revisits their failed motion to amend. But because James does not challenge error preservation here, we opt to address this argument.

maintained that it would be the date of the eventual real estate contract. James argued that under the doctrine of equitable conversion, the date was when he exercised his option. The court determined that the date for determining fair market value was July 31, 2020—when James's exercise of his purchase option worked an equitable conversion of the real estate to personalty for the siblings.

The district court stated: "Case law is clear that under the doctrine of equitable conversion the nature of the right in the real estate in the seller converts from realty to personalty as of the date of the happening of the condition established to trigger the sale of the real estate." We agree. *See generally Holzhauser v. Iowa State Tax Comm'n*, 62 N.W.2d 229, 233 (Iowa 1953) (explaining that a will may direct land to be sold and the beneficiaries' interest is then turned into money). The "real purpose" of the equitable-conversion doctrine "is to give effect to the manifest intent of a testator." *See Ingraham v. Chandler*, 161 N.W. 434, 435 (Iowa 1917). The manifest intent of Eugene and Mildred was to give their son James, who farmed with them, the chance to buy the land from his siblings at a fair price after their parents were gone. Like the district court, we find the will created an enforceable option for James to buy the real estate at fair market value.

And like the district court, we believe the fair market value should be determined at the time James exercised the option to purchase. "It is only when the optionee binds himself to buy that the equitable conversion takes place." *Id.* James bound himself to purchase the real estate in July 2020, when he sent notice to his siblings. Applying the equitable-conversion doctrine here carried out the

intent of the testators and did not circumvent public policy.[12]  *See Construx of Ill., Inc. v. Kaiserman*, 800 N.E.2d 1267, 1275 (Ill. App. Ct. 2003).  We thus affirm the grant of partial summary judgment to James.

## C. Crediting Rent Payments and Calculating Interest

Having upheld the grant of partial summary judgment to James, we turn to the siblings' complaints about deducting the rent James paid in 2021 and 2022 from the purchase price and the court's calculation of interest.

### 1. Rent

The siblings argue that the district court erred in crediting James for his rent payments because "this relief was outside the scope of the pleadings."  They insist that James did not provide notice of his intent to claim this offset.

In response, James asserts that the siblings should not be surprised that his rent payments would be credited toward the purchase price.  He recalls that counsel for the siblings argued in March 2022 that James's act of paying rent showed he wasn't the equitable owner of the real estate.  James's attorney responded that his client was "between a rock and hard place" and continued to

---

[12] In fact, James asserts that applying the doctrine in situations like this is "good public policy."  In his view, not only was it "in accord with the language and intent of the wills," but it ensured that the parents' desire to equitably divide their estate among their six children could be accomplished.  He reasoned:

> Farmland values can fluctuate greatly within a five-year period.  Had the purchase price been tied to a date of death, there would be the risk that some children would not receive the benefit of inflating real estate values.  Alternatively, if real estate values depreciated over time, the purchase price would have been inequitably inflated.  Furthermore, by fixing the fair market value to a date certain, any motivation to manipulate the sale date after an option is exercised should be eliminated.

We agree with his reasoning.

pay rent so the siblings did not pursue a forcible entry and detainer action. On appeal, James contends the siblings knew the equitable-conversion doctrine could apply and that giving him credit for the rent payments fell within the parties' requests for general relief. We agree with James.

"[P]rayers for general relief are to be construed liberally." *City of Okoboji v. Parks*, 830 N.W.2d 300, 309 (Iowa 2013). "Under a prayer for general relief, a court may grant relief 'consistent with the pleadings and the evidence.'" *Id.* (citation omitted). But any relief granted must not surprise the other side. *Jorge Constr. Co. v. Weigel Excavating & Grading Co.*, 343 N.W.2d 439, 442 (Iowa 1984). The siblings asked the court to determine the terms of the purchase contract. This general request would include the rent offset. The siblings tried to use the rent payments to their tactical advantage. Losing that argument, they should have predicted that the payments would be part of the court's calculus in granting equitable relief. It would make no sense for a court sitting in equity to deny James credit for rent he paid after the court decided that he was the equitable owner as of July 2020. Thus, we affirm the deduction of rent he paid for 2021 and 2022 from the purchase price.

### 2. Interest

The siblings also dispute the district court's calculation of interest. They contend the court "ignored the express language" of the will and, instead, substituted its own terms as to what interest rate applied. The will states that purchase terms include a down payment of twenty percent, the balance to be paid "in accordance with a five-year real estate contract providing for annual principal payments of three percent of the balance following the down payment, plus interest

payments at the rate set for the last sale of five (5) year U.S. Treasury Notes *prior* to the date of the contract." (Emphasis added.) The district court declared: "The terms of the option gave [James] the option to finance the purchase over five years at the 5-year US Treasury Rate as of the date of the exercise of the option." The siblings argue that the appropriate interest rate cannot be determined yet because "there is still no real estate contract."

James rebuffs the siblings' assumption that there must be a separate real estate contract. He urges that requiring the parties to execute another contract beyond his exercise of the purchase option would be adding terms to the will.

To settle the debate over the will language, we follow three rules. We look first to the testator's intent, which "is the polestar and must prevail." *In re Est. of Kruse*, 250 N.W.2d 432, 433 (Iowa 1977) (citation omitted). Second, "the intent must be gathered from a consideration of all the language of the will, the scheme of distribution, and the facts and circumstances surrounding the making of the will." *Id.* (citation omitted). Third, we resort to "technical rules of construction" only if the language of the will is ambiguous or conflicting or the testator's intent is uncertain. *Id.* (citation omitted).

Granted, Mildred's will does mention a "real estate contract." But only to say that the balance must be paid "in accordance" with such a five-year contract after James exercises the purchase option. Read as a whole, the will is unambiguous. Mildred wanted to distribute her estate equally to all six children. And the terms governing James's purchase of the real estate are specific and clear. The siblings try to reargue their disfavor with equitable conversion, stating that there was no contract, thus, the interest should have been calculated as of a

later date. But since we have decided that James's exercise of the option worked an equitable conversion of the real estate as of July 2020, and fair market value was based on that date, the district court properly calculated the interest.

### D. Marketable Title

Lastly, the siblings argue that since their spouses are not named parties in the action and were never served notice, the district court lacked jurisdiction over them. According to the siblings, the court's declaration is void "to the extent it requires signing of the warranty deed by the Spouses." The siblings urge "the case should be remanded to determine the rights of the Spouses."

James acknowledges that the siblings raise a valid point on the court's jurisdiction over the spouses. But he invites our court to resolve the issue on appeal by instructing the district court to revise its order so that the siblings "simply" convey marketable title. We decline that invitation. Rather, we remand with instructions for the district court to address the issue of marketable title.

**AFFIRMED AND REMANDED WITH DIRECTIONS.**