# IN THE SUPREME COURT OF IOWA

No. 145 / 04-0273

Filed March 30, 2007

**STATE OF IOWA, ex rel.
JEANNIE E. DOBBS,**

Appellee/Cross-Appellant,

vs.

**JOHN BURCHE,**

Appellant/Cross-Appellee.

---------------------------------------------------------------------------------------------

**STATE OF IOWA, ex rel.
DAWN M. HALLIGAN,**

Appellee/Cross-Appellant,

vs.

**JOHN A. BURCHE and MAURA BURCHE,**

Appellants/Cross-Appellees.

_____

Appeal from the Iowa District Court for Scott County, John A. Nahra, Judge.

The defendants in an action alleging sexual discrimination in housing challenge as overbroad an injunction restricting their ability to engage in rental of residential real estate. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

John Burche and Maura Burche, Davenport, pro se.

Thomas J. Miller, Attorney General, and Teresa M. Baustian, Assistant Attorney General, for appellees.

**HECHT, Justice.**

The State, suing on behalf of former tenants, brought this action against the tenants' former landlord, I.J.P., Inc., and its owners, John Burche and Maura Burche, alleging sexual discrimination in housing. The district court entered judgment against the defendants for compensatory and punitive damages, penalties, and injunctive relief. During the pendency of this appeal, the parties reached a settlement agreement calling for satisfaction of the money judgment. Upon review of the issues not rendered moot by the settlement, we affirm in part, reverse in part, and remand this case for the entry of a judgment granting injunctive relief consistent with this opinion.

**I.     *Background Facts.***

A reasonable person could find the following facts from the record in this case. Jeannie Dobbs was a residential tenant of I.J.P., Inc., a corporation owned by John Burche and his wife, Maura Burche. Mr. Burche appeared at Dobbs's apartment on August 1, 1999, purportedly to collect rent. Mr. Burche put his hands on Dobbs's face and told her she was pretty. During another visit to her apartment, Mr. Burche again told Dobbs she was pretty and asked her to go out with him, an offer she declined. When Dobbs reminded Mr. Burche he was a married man, he said, "What does that matter?" On that occasion, Mr. Burche grabbed her and kissed her on the cheek. During yet another encounter, Mr. Burche grabbed her face and kissed her on the mouth.

Mr. Burche frequently appeared at Dobbs's apartment without her permission. On one such occasion, she was alone in her apartment taking a shower. Hearing what she believed was the sound of a door closing, Dobbs opened the bathroom door. She saw Mr. Burche climbing the stairs,

so she shut and locked the bathroom door. Mr. Burche claimed he had arrived to fix the toilet, but Dobbs did not recall reporting a faulty toilet.

These incidents made Dobbs's continued tenancy burdensome and significantly less desirable than it would have been in the absence of the harassment. Dobbs testified that in September of 1999 her boyfriend assisted Mr. Burche with some work. Consequently, Mr. Burche took Dobbs and her boyfriend out to lunch. After lunch, Burch followed Dobbs inside her apartment and told her they would have dinner alone on October 16, 1999. Dobbs, fearful of Mr. Burche's conduct, stayed away from her residence on October 16. She requested that her boyfriend spend more time at her apartment to keep Mr. Burche away. Dobbs testified that because Mr. Burche's conduct made her uncomfortable, she used her income tax refund to secure other housing.

Mr. Burche committed similar acts against Dawn Halligan, another tenant. Mr. Burche subjected her to unwelcome conduct of a sexual nature and requests for sexual favors. Mr. Burche agreed to keep her electrical and water service in his name, due to her lack of credit. When Mr. Burche came to Halligan's apartment to discuss her desire to obtain lower rental payments in exchange for cleaning his apartments, Mr. Burche told her he would give her "gifts," which she interpreted to mean lower rental payments, in exchange for sex. Halligan declined this proposal. Upon leaving Halligan's residence, Mr. Burche held her in his arms and kissed her against her will on each cheek "for good luck."

After Halligan had cleaned apartments for Mr. Burche, she received a notice alleging she had not fully paid her rent. She borrowed money from her mother and requested an extension of the time period in which to pay the rent. Mr. Burche again suggested to Halligan that if she had sex with

him, he would give her "gifts," which Halligan again interpreted to mean a reduction of her rent. Halligan declined.

Because of Mr. Burche's unwelcome conduct, Halligan's tenancy became significantly less desirable. She began spending nights with her mother and friends, and a friend stayed with her for awhile. She eventually decided she had no choice but to move, notwithstanding her desire to prove to the Department of Human Services that she was stable and ready to reacquire custody of her children. Before she moved, Mr. Burche terminated Halligan's electrical and water service.

Seven other former tenants of I.J.P., Inc., though not specifically joined as plaintiffs, testified that Mr. Burche had sexually harassed them. They generally endured acts of sexual harassment similar to those suffered by Dobbs and Halligan at the hands of Mr. Burche, including unwanted touching and invitations for sex in lieu of rental payments. One former tenant testified the day she moved into her apartment, Mr. Burche tried to convince her to have sex with him for "good luck." When she refused, Mr. Burche overpowered and raped her. Mr. Burche evicted some of these tenants, while others moved to avoid further contact with him.

Although Mrs. Burche was not directly involved in her husband's unwanted sexual advances against tenants, she did lash out against those who reported such incidents to her. Mrs. Burche accused one tenant of sleeping with Mr. Burche and called her a whore. Similarly, when one tenant requested that Mrs. Burche ask her husband to stop calling, Mrs. Burche called the tenant a whore.

### II.    *Background Proceedings.*

The State's Petition alleged that Mr. and Mrs. Burche's behavior constituted sex discrimination in violation of the Iowa Civil Rights Act of

1965 (2001) (ICRA). The State sought damages not only for Dobbs and Halligan, the named plaintiffs, but also for witnesses who neither intervened nor were parties but who were allegedly "identifiable victim[s] of Defendants' discriminatory housing practices." *See* Iowa Code § 216.17A(9)(*b*)(2) (authorizing courts to award damages in actions under the ICRA). The State also sought the assessment of a civil penalty to be paid to the State, a declaratory judgment that defendants violated the ICRA, and an injunction restraining the defendants from discriminating on the basis of sex with regard to apartment rentals in the future, interfering with or threatening to take actions against people exercising or enjoying rights granted or protected by the ICRA, and failing to take affirmative steps to ensure the discontinuance of the alleged discrimination. *See id.* § 216.17A(9)(*b*)(1)-(3) (authorizing courts to order injunctions, civil penalties, and other "appropriate relief" in actions under the ICRA).

After a trial, the district court found the defendants: (1) created a hostile housing environment for female tenants, in violation of section 216.8(2); (2) engaged in conduct amounting to quid pro quo sexual harassment of female tenants, in violation of section 216.8(2); (3) constructively evicted female tenants through quid pro quo sexual harassment and creation of a hostile housing environment, in violation of section 216.8(1); (4) interfered with female tenants' enjoyment of their apartments without sex discrimination, in violation of section 216.11A; and (5) engaged in a pattern or practice of resistance to the rights granted and protected by the ICRA, in violation of section 216.17A(9). Because the district court believed a "drastic measure" was necessary to prevent Mr. and Mrs. Burche from engaging in future acts of sex discrimination, the court permanently enjoined them from "participat[ing] in the management of any

residential properties . . . currently owned or acquired in the future, in whole or in part." The district court's ruling further directed the Burches to hire an independent firm—defined as a firm not owned by and that does not employ or "utilize any individual or company . . . related to John or Maura Burche by blood or by marriage"—to manage their rental properties. Although the injunction authorized them to visit their rental properties (1) for the purpose of inspection when notified by the independent management firm that a rental unit is "unoccupied, vacant and not under lease," and (2) "for a purpose other than engaging in management activities," the Burches were enjoined from initiating verbal or other contact with female tenants during such visits. The district court also found the defendants liable to Dobbs and Halligan for compensatory and punitive damages and assessed a civil penalty to be paid by the defendants to the State.[1] The court rejected the State's prayer for damages sustained by nonparty witnesses who testified that they had also been harmed by defendants' patterns and practices of discrimination in housing.

The defendants appealed, and the State cross-appealed. During the pendency of this appeal, I.J.P., Inc. filed a petition in bankruptcy. The Chapter 7 trustee and the State entered into a settlement approved by the bankruptcy court. The court file discloses that the holders of all discrimination claims agreed to dismiss "any and all claims against I.J.P., Inc.," to dismiss "any and all pending claims against John and Maura Burche, personally," and to "release and satisfy any judgments [they] may currently hold against John or Maura Burche, personally." In an order filed August 30, 2006, this court granted the State's motion to dismiss

---

[1]Judgment was entered against the defendants for compensatory damages in the amount of $10,000 for Dobbs and $10,000 for Halligan. The court also entered judgment against the defendants for punitive damages in the amount of $50,000 and ordered payment of a civil penalty to the State in the amount of $50,000.

I.J.P., Inc.'s appeal, but denied a motion requesting the same relief as to the appeal filed by Mr. and Mrs. Burche individually.

### III. Issues on Appeal.

The Burches, who appear pro se, contend there is no factual or legal basis for the award of damages and penalties in this case. The State has cross-appealed, contending the district court erred in failing to award damages to the non-party witnesses who experienced discrimination in housing as tenants of I.J.P., Inc. We conclude, however, that the settlement of all damage claims against I.J.P., Inc. and the Burches has rendered these contentions moot.[2] *See State v. Briggs,* 666 N.W.2d 573, 576 (Iowa 2003) ("As a rule, we do not decide appeals in which 'the issue becomes nonexistent or academic and, consequently, no longer involves a justiciable controversy.'" (quoting *State v. Hernandez-Lopez,* 639 N.W.2d 226, 234 (Iowa 2002))).

The issues remaining for decision in this appeal are the Burches' claims that (1) the district court's decision granting permanent injunctive relief is not supported by sufficient evidence, and (2) the nature and extent of the injunctive relief granted by the district court is excessive in scope and inequitable.[3]

### IV. Scope of Review.

" 'An injunction may be obtained as an independent remedy [in] an action in equity, or as an auxiliary remedy in any action.' " *Lewis Invs., Inc.*

[2]The settlement included the claims not only of the State, Dobbs, and Halligan, but also those of the non-parties whose claims were the subject of the State's cross-appeal.

[3]Other claims asserted in the Burches' pro se brief on appeal are without merit, or were not preserved for our review because they were not presented to and decided by the district court. *See Meier v. Senecaut,* 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (citing *Metz v. Amoco Oil Co.,* 581 N.W.2d 597, 600 (Iowa 1998); *Peters v. Burlington N. R.R. Co.,* 492 N.W.2d 399, 401 (Iowa 1992))).

*v. City of Iowa City,* 703 N.W.2d 180, 184 (Iowa 2005) (quoting Iowa R. Civ. P. 1.1501).  If an injunction is obtained as an independent remedy in an equitable action, review is de novo; however, if an injunction is obtained as an auxiliary remedy in an action at law, review is for correction of errors of law.  *See Harrington v. Univ. of N. Iowa*, 726 N.W.2d 363, 365 (Iowa 2007); *Green v. Advance Homes, Inc.*, 293 N.W.2d 204, 208 (Iowa 1980).  This case was filed and tried as a law action.  The plaintiffs sought an injunction as an auxiliary remedy.  Consequently, our review is for correction of errors at law.

### *V.* *Discussion.*

#### *1.* *Sufficiency of the Evidence.*

The Burches devote much of their brief to an attack on the credibility of Dobbs, Halligan, and the other witnesses whose testimony provided the factual basis for the equitable relief ordered by the district court.  The recurring theme advanced by the Burches is that the witnesses against them should not be believed because they were all motivated by an economic motive to avoid payment of rent.  The district court found the tenant-witnesses credible and the Burches incredible.  The district court's findings as to credibility are supported by substantial evidence.  The evidence supporting the district court's finding that Mr. Burche committed serial acts of sexual harassment against the defendants' tenants is overwhelming.  We therefore affirm on this issue.

#### *2.* *Nature and Extent of Equitable Relief.*

The Burches assail the scope and extent of the permanent injunction on the ground that it inequitably limits their lawful business activities and unreasonably requires them to hire an independent management firm to manage all rental properties they now own or may own in the future.

Generally, the scope of a violation determines the scope of a remedy against further violations. *See Sherman v. Kasotakis*, 314 F. Supp. 2d 843, 878 (N.D. Iowa 2004) (citing *Easley v. Anheuser-Busch, Inc.,* 758 F.2d 251, 263 (8th Cir. 1985)) (stating "the scope of the injunction may not be broader than necessary to remedy the underlying wrong").

Given the compelling evidence of Mr. Burche's history of sexual harassment of numerous female tenants, we find an overwhelming factual basis for a permanent injunction restraining him from engaging in such discriminatory conduct in the future. We consequently find Mr. Burche should be permanently enjoined from initiating contacts with visiting rental properties when existing or potential female tenants are there. Such injunctive relief against Mr. Burche is appropriate in scope and reach under the egregious circumstances of this case and is necessary to restrain his persistent predatory behavior.

However, the court should enjoin the defendants' activities no further than necessary to deter the defendants from the discriminatory patterns and practices demonstrated in this record. We conclude the facts of this case and relevant equitable principles do not justify the requirement that the Burches hire an independent management firm to manage their rental properties or the prohibition against Mr. Burche's involvement in residential rental property management activities that may be accomplished without direct contact with existing or potential female tenants.

We further conclude that principles of equity do not justify or require a permanent injunction precluding Mrs. Burche from the management of rental properties and from initiating in-person contact with female tenants. Although she uttered offensive epithets when addressing two female tenants and refused to credit reports of Mr. Burche's abusive and discriminatory

acts when they were reported to her, we find no substantial evidence tending to prove Mrs. Burche personally engaged in the substantially more egregious, harassing and assaultive behavior which characterized her husband's interactions with several female tenants.

### *VI. Disposition*.

In summary, we affirm on the sufficiency of the evidence issue. However, because the injunction granted by the district court is too broad in scope, we reverse and remand for the grant of an injunction consistent with this opinion. The district court shall excise from the permanent injunction the requirement that the Burches hire an independent management firm to manage their rental properties. It shall also excise: (1) the prohibition against Mr. Burche's visits to the defendants' rental properties for legitimate management purposes when existing or potential female tenants are not present, and (2) the prohibition against Mr. Burche's involvement in management activities that are accomplished without his personal presence on the premises and without his initiation of contact with existing or potential female tenants, and (3) all restrictions upon Mrs. Burche's participation in the management of the defendants' rental properties. All other provisions of the injunction shall remain intact.

Costs on appeal are assessed fifty percent against the appellants and fifty percent against the appellee.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**