# IN THE SUPREME COURT OF IOWA

No. 15–0547

Filed December 2, 2016

Amended February 10, 2017

Upon the Petition of
**KENT D. LANGHOLZ,**

Appellant,

And Concerning,
**HAROLD E. BRUMBAUGH,**

Appellee.

Appeal from the Iowa District Court for Linn County, Mary E. Chicchelly, Judge.

Plaintiff appeals the district court order prohibiting the redissemination of its ruling granting permanent injunctive relief and denying the expansion of the terms of a permanent injunction. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Jacob R. Koller of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellant.

Laura A. Kamienski of Ackley, Kopecky & Kingery, L.L.P., Cedar Rapids, for appellee.

**ZAGER, Justice.**

A father filed for an injunction precluding communication and contact between his minor child and her former softball coach. After a trial, the district court granted a permanent injunction against the former coach that prevented him from contacting or communicating with the child, but allowed him to attend certain extracurricular activities and to be present in the home of the child's mother. The district court also sealed all records and its ruling granting permanent injunctive relief. The father filed a motion requesting that the district court allow for the redissemination of the ruling granting permanent injunctive relief. The father also requested that the district court expand the terms of the permanent injunction. The district court denied the motion, but allowed redissemination of the terms of the permanent injunction. The father appeals. For the reasons set forth below, we remand the case for a hearing consistent with the Iowa Open Records Act to determine whether the ruling on permanent injunctive relief should be sealed and its breadth. We also conclude the district court did not err in denying the motion to expand the terms of the permanent injunction.

## I. Background Facts and Proceedings.

Because the ruling in this case has been sealed by the district court and we must determine whether this ruling was correct, we omit the underlying factual findings and concentrate on the procedural history.

Kent Langholz (Kent) is the father and Angela Hagedorn (f/k/a Angela Langholz) (Angela) is the mother of K.M.L. and S.E.L. Harold Brumbaugh (Harold) is the former softball coach of K.M.L. In October 2013, Kent filed an ex parte application for injunctive relief, which the

district court granted on October 2. The terms of the temporary injunction were as follows:

> [T]hat the Respondent, Harold E. Brumbaugh, is enjoined and restrained from communicating and/or otherwise contacting K.M.L. and S.E.L. in any matter, including but not limited to, visiting any residence in which K.M.L. and S.E.L. reside and attending the sporting or other extracurricular events of either child.

As part of the temporary injunction, the district court also ordered "that the Petitioner's Exhibits 1-9 are received under seal and shall not be available to the public."

The district court held a hearing on January 8, 2014, to determine whether the ex parte temporary injunction would remain in effect during the proceedings. During the hearing, the parties agreed on the following terms for the temporary injunction:

> [A] temporary injunction is entered against Respondent, Harold E. Brumbaugh, and he shall be enjoined and restrained from communication with and/or otherwise contacting K.M.L. and S.E.L. in any matter whatsoever, including but not limited to, contact or communications through a third party, passing gifts, or attending the sporting or other extracurricular events of either child; provided, however, that the Respondent may attend the extracurricular events of his step-grandchildren, which may also involve K.M.L. or S.E.L. as a participant, and he may attend any game or event at any sports complex, provided that neither child is participating in the game or event which he is attending and he makes every effort to avoid visual contact with K.M.L. and S.E.L. at all times.

Notably, the stipulated temporary injunction did not prevent Harold from being present at the children's residence so long as neither child was present. The parties also agreed that the clerk of court would seal all documents except for court orders, decrees, and judgments.

Harold was mostly compliant with the terms of the injunction. However, during one of K.M.L.'s softball tournaments in September

2014, Harold was present to coach another team. During the game, Harold stood behind her dugout, walked by the dugout multiple times, and did not make any effort to stay out of K.M.L.'s sight. Kent reported that after the tournament, K.M.L. was not acting like herself and became withdrawn, moody, and quiet.

The trial on Kent's petition seeking permanent injunctive relief was held on January 27 and 28, 2015. On February 4, the district court entered its ruling granting Kent's request for a permanent injunction. The terms of the permanent injunction are as follows:

> Defendant Harold Brumbaugh shall be enjoined and restrained from communicating with and/or otherwise contacting K.M.L. and S.E.L. in any matter whatsoever, including but not limited to, all written and in person contact or communications, all contact or communications through a third party, passing notes or gifts, or attending the sporting or other extracurricular events of either child; provided, however, that Defendant Harold Brumbaugh may attend the extracurricular events of his step-grandchildren, which may also involve K.M.L. or S.E.L. as a participant, and he may attend any game or event at any sports complex, provided that neither child is participating in the game or event which he is attending and he make every effort to avoid visual contact with K.M.L. and S.E.L. at all times, and shall be no closer in proximity to them than 100 feet. This injunction shall remain in place until K.M.L. and S.E.L. each reach the age of majority.

The district court ruling also ordered that the "ruling shall be sealed and shall be accessible only by the parties and their counsel."

On February 13, Harold filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2). In his motion, Harold requested the district court prevent redissemination of the ruling granting injunctive relief. He also asked the district court to eliminate the portion of its ruling that provides he "shall be no closer in proximity to [K.M.L. and S.E.L.] than 100 feet." In response, Kent filed a motion pursuant to rule 1.904(2) asking the district court to expand its ruling to prevent Harold from

being present at Angela's home and to prevent him from attending any games that either K.M.L. or S.E.L. were participating in. Kent also resisted Harold's request to prohibit redissemination of the district court ruling granting permanent injunctive relief.

On February 27, the district court issued its ruling on the 1.904(2) motions. The district court denied the request to modify any of the provisions of the permanent injunction, noting that the terms of the permanent injunction were "carefully drawn . . . to address the dangers and potential for injury found by the Court throughout the record as a whole." The district court found that the terms of the permanent injunction already provided the necessary protection for the children, and that Kent's proposed terms would be overly burdensome and would exceed what was necessary to protect the children.

The district court did, however, order that the ruling granting permanent injunctive relief shall be sealed and "shall not be disseminated in any manner by the parties and their counsel. The parties and their counsel shall, however, be allowed to communicate only the fact that an injunction is in place." Specifically, the parties are allowed to communicate that an injunction is in place that prevents Harold from having contact with the children, including the 100-foot distance rule at extracurricular activities. The district court noted in its ruling that the purpose for sealing the file was to protect the privacy and best interests of K.M.L. and S.E.L. The district court subsequently amended its February 4 ruling to read,

> [T]his ruling shall be sealed and shall be accessible only by the parties and their counsel, and shall not be re-disseminated in any manner by the parties and their counsel. The parties and their counsel, shall, however, be allowed to communicate only the fact that an injunction is in place which prohibits Defendant from having any contact

with the minor children at issue herein, including the 100 foot rule at games and tournaments, in order to effectuate enforcement of the terms of the injunction.

On March 10, Kent filed a second motion pursuant to rule 1.904(2) and asked the district court to amend its ruling to allow redissemination of the ruling for permanent injunctive relief, which Harold resisted. The district court issued a ruling on March 25 that denied Kent's motion. The district court directed the clerk of court to execute a writ of injunction that stated,

> Defendant Harold Brumbaugh shall be enjoined and restrained from communicating with and/or otherwise contacting K.M.L. and S.E.L. in any matter whatsoever, including but not limited to, all written and in person contact or communications, all contact or communications through a third party, passing notes or gifts, or attending the sporting or other extracurricular events of either child; provided, however, that Defendant Harold Brumbaugh may attend the extracurricular events of his step-grandchildren, which may also involve K.M.L. or S.E.L. as a participant, and he may attend any game or event at any sports complex, provided that neither child is participating in the game or event which he is attending and he make every effort to avoid visual contact with K.M.L. and S.E.L. at all times, and shall be no closer in proximity to them than 100 feet. This injunction shall remain in place until K.M.L. and S.E.L. each reach the age of majority.

The writ was ordered not to be sealed and to be subject to redissemination by the parties as necessary to enforce the district court's February 4 ruling granting permanent injunctive relief. The ruling itself containing the terms of the permanent injunction was to remain sealed. Kent filed an appeal on March 27, which we retained.

## II. Standard of Review.

Generally, our review of an equitable proceeding is de novo. *Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 880 (Iowa 2014). To the extent we are asked to engage in statutory interpretation, our review is for correction of errors at law. *Id.*; *Iowa Film Prod. Servs. v. Iowa Dep't of*

*Econ. Dev.*, 818 N.W.2d 207, 217 (Iowa 2012). In equity cases, although the trial court's factual findings are not binding, we give weight to the court's assessment of witness credibility. Iowa R. App. P. 6.904(3)(*g*); *see also Wellmark, Inc. v. Polk Cty. Bd. of Review*, 875 N.W.2d 667, 672 (Iowa 2016).

"An injunction may be obtained as an independent remedy [in] an action in equity, or as an auxiliary remedy in any action." *State ex rel. Dobbs v. Burche*, 729 N.W.2d 431, 435 (Iowa 2007) (quoting *Lewis Invs., Inc. v. City of Iowa City*, 703 N.W.2d 180, 184 (Iowa 2005)). When the injunction is sought as an independent remedy, our review is de novo. *Id.* When it is obtained as an auxiliary remedy, our review is for correction of errors at law. *Id.* This case was filed and tried as an equitable action, and therefore our review is de novo. *See id.*

**III. Analysis.**

**A. Sealing the Ruling on Permanent Injunction.** At the time the temporary injunction was ordered, the parties agreed that the clerk would "seal all documents except for court orders, decrees, and judgments." When the district court issued the permanent injunction on February 4, 2015, it ordered the ruling to be sealed and only accessible by the parties and their counsel.

On March 10, Kent filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2) asking the district court to amend its ruling to allow redissemination of the ruling on permanent injunction. Kent's motion was denied. The district court, noting its inherent authority, stated that the reason for sealing the record was to protect the privacy and best interests of the Langholz children. The district court also clarified that, although the terms of the injunction are sealed, the parties are able to communicate the fact that an injunction is in place which prohibits

Harold from having any contact with K.M.L. or S.E.L. The district court further noted that communicating the underlying reasons for the injunction was not necessary for its enforcement.

Kent alleges that he agreed to seal the court file with the exception of any court orders, decrees, and judgments, but he did not agree to seal the ruling granting permanent injunctive relief itself. He argues that there is no statutory support for sealing the ruling granting the injunction under the Iowa Open Records Act. Kent further argues that Harold did not properly request an order sealing the contents of the ruling on permanent injunction under the Iowa Open Records Act, but rather requested a limitation in a posttrial motion. Because Harold did not request an order under the Act, the district court did not hold a hearing or make the necessary findings to authorize sealing the district court's ruling granting permanent injunctive relief.

Harold responds that there are several provisions under the Iowa Open Records Act that protect information relating to minors and these provisions are consistent with the stated reason given by the district court for not allowing redissemination of the ruling granting the permanent injunction. Harold also argues that the ruling references an interview between K.M.L. and an employee of the Child Protection Center (CPC), which constitutes child abuse information that is statutorily protected from redissemination under Iowa Code chapter 235A (2015).[1]

The general purpose of the Iowa Open Records Act is to "open the doors of government to public scrutiny [and] to prevent government from

---

[1]In the alternative, we are asked to define the parameters of the inherent authority of the district court to seal records of court proceedings. However, it is not necessary to address the issue of inherent authority in order to resolve this case. The legislature has provided a mechanism to resolve disputes involving the sealing of public records in chapter 22.

secreting its decision-making activities from the public, on whose behalf it is its duty to act." *Iowa Film Prods. Servs.*, 818 N.W.2d at 217 (alteration in original) (quoting *City of Riverdale v. Diercks*, 806 N.W.2d 643, 652 (Iowa 2011)). The Act carries with it "a presumption of openness and disclosure." *Id.* (quoting *Gabrilson v. Flynn*, 554 N.W.2d 267, 271 (Iowa 1996)).

The Iowa Open Records Act generally requires every person to "have the right to examine and copy a public record and to publish or otherwise disseminate a public record or the information contained in a public record." Iowa Code § 22.2(1). However, it also states "[t]he following records shall be kept confidential, unless ordered by a court, by the lawful custodian of the records, or by another person duly authorized to release such information." *Id.* § 22.7. The legislature has amended the list in section 22.7 several times since the original enactment, and there are currently over sixty types of records that are exempted from disclosure. *ACLU of Iowa, Inc. v. Records Custodian*, 818 N.W.2d 231, 233 (Iowa 2012).

If a public record does not fall under one of the stated exemptions, the district court may still grant an injunction to restrain the examination of the record. Iowa Code § 22.8(1). This injunction is an equitable remedy that is independent of the section 22.7 listed exceptions. *Burton v. Univ. of Iowa Hosps. & Clinics*, 566 N.W.2d 182, 189 (Iowa 1997). However, a district court may only issue this injunction if it finds that "the examination would clearly not be in the public interest" and that "the examination would substantially and irreparably injure any person or persons." *Id.* (quoting Iowa Code § 22.8(1)). The petition requesting the injunction should support these findings, and the district court should hold a hearing to determine whether the burden has

been met. *See id.*; *see also Hall v. Broadlawns Med. Ctr.*, 811 N.W.2d 478, 487 (Iowa 2012) (establishing that the burden of demonstrating the elements is on the person resisting disclosure). The party opposing disclosure must establish the elements by clear and convincing evidence. Iowa Code § 22.8(3). In addition to the statutory exemptions contained in section 22.7, there are also separate laws requiring documents to be kept confidential. *See Burton*, 566 N.W.2d at 189 (holding that, in addition to 22.7 exemptions, effect should be given to any statute outside chapter 22 that requires otherwise public records to be kept confidential). Therefore, there may be other legal grounds for sealing all or part of a court order.

When determining whether the injunction should be issued, the district court "shall take into account the policy of this chapter that free and open examination of public records is generally in the public interest." Iowa Code § 22.8(3). This is true even when allowing access to the records "may cause inconvenience or embarrassment to public officials or others." *Id.* In addition to the statutory limitations, we have also adopted a five-factor test that balances privacy with the benefits of public disclosure:

> (1) the public purpose of the party requesting the information; (2) whether the purpose could be accomplished without the disclosure of personal information; (3) the scope of the request; (4) whether alternative sources for obtaining the information exist; and (5) the gravity of the invasion of personal privacy.

*Clymer v. City of Cedar Rapids*, 601 N.W.2d 42, 45 (Iowa 1999) (quoting *DeLaMater v. Marion Civil Serv. Comm'n*, 554 N.W.2d 875, 879 (Iowa 1996)).

In *Gabrilson*, we addressed the question of whether the district court could grant injunctive relief under section 22.8 when it had not

been specifically pled. 554 N.W.2d at 274. The plaintiff filed a two-count petition that included a count for injunctive relief pursuant to chapter 22. *Id.* at 270. The district court then dismissed the count of the petition including the chapter 22 claim, therefore never determining whether injunctive relief was required. *Id.* Both parties later filed competing rule 179(b) motions to enlarge the district court findings.[2] *Id.* The district court granted the motions and held that certain documents were confidential as statutorily excluded documents under Iowa Code section 22.7(19). *Id.* The district court issued an injunction pursuant to section 22.8 as an independent avenue of relief, finding that the requirements of the section had been met as a matter of law. *Id.*

The defendant, Flynn, contended that his motion to enlarge was effectively a petition for injunctive relief pursuant to section 22.8, even though it was not so labeled. *Id.* at 274. His motion to enlarge requested that the district court hold "as a matter of law that Carolyn Gabrilson cannot publish, disseminate, and distribute the Eleventh Grade Assessment Test and the scoring rubrics, because [under section 22.7] these documents are confidential." *Id.* He further argued that Gabrilson had both proper notice and an opportunity to be heard at the hearing on the motions to enlarge. *Id.*

While the district court sealed the documents under section 22.8, the documents also fell under one of the section 22.7 exceptions. *Id.* Because a section 22.7 exception applied, we declined to answer the question and instead held that the district court could issue the injunction under section 22.5, the section giving force to the exceptions found in section 22.7. *Id.* We held that depriving the district court of

---

[2]This motion is now a rule 1.904 motion. Iowa R. Civ. P. 1.904.

injunctive remedies under the particular facts of *Gabrilson* would frustrate the purpose of the Iowa Open Records Act. *Id.* We found that when a record is granted confidential status under section 22.7 an injunction is the proper remedy when someone seeks to disclose those records. *Id.* In that situation, it made no difference how the injunction was labelled because the documents are granted confidential status as a matter of law. *Id.*

In contrast to *Gabrilson,* no section 22.7 exception clearly applies in this case, and therefore the records carry "a presumption of openness and disclosure." *Iowa Film Prods. Servs.,* 818 N.W.2d at 217 (quoting *Gabrilson,* 554 N.W.2d at 271). We now hold that if no exclusions apply under section 22.7, and the sole injunctive relief sought is under 22.8, the district court must conduct a hearing and make factual findings as provided by the statute. By enacting the Iowa Open Records Act, the legislature enacted a statutory scheme intended to address when public records may be sealed. Here, this procedure was not followed by the district court.

Harold also specifically argues that the ruling contains information about a child abuse investigation and is therefore prevented from redissemination under chapter 235A. *See* Iowa Code §§ 235A.15, .17. Generally, the purpose of chapter 235A is to maintain the confidentiality of information in a central child abuse registry and to prevent the redissemination of information of founded child abuse reports. *See, e.g., id.* § 235A.12. Harold claims that the interview between K.M.L. and the CPC employee constitutes child abuse information under section

235A.17.[3] *See id.* § 235A.17. While section 235A.17 does prohibit the redissemination of child abuse information in certain circumstances, it narrowly defines "subject of a child abuse report" to mean a child named as a victim of founded abuse; that child's parent, or legal guardian; or the individual named as having abused a child. *Id.* §§ 235A.15, .17. Further, "child abuse information" is defined by statute as "any or all data maintained by the department in a manual or automated data storage system," in addition to report data, assessment data, and disposition data. *Id.* § 235A.13(2)(*a*)–(*c*). Again, this definition encompasses founded reports of child abuse. "Report data" is restricted to cases where the department has determined the allegation of child abuse is founded. *Id.* § 235A.13(10). "Assessment data" includes information regarding services available to children who are victims of founded child abuse and their families. *Id.* § 235A.13(1). "Disposition data" refers to an opinion or decision "as to the occurrence of child abuse." *Id.* § 235A.13(5).

In this case, the CPC employee determined that the allegation of child abuse was not founded. This could be considered disposition data under the applicable statute. *See id.* However, the district court did not conduct a hearing on this or make factual findings as to the statute's applicability. Therefore, the appropriate remedy in this case is to remand to the district court so that it can conduct a hearing and make factual findings consistent with Iowa Code section 22.8 before it can seal a court document, order, or ruling that is not otherwise required to be kept

---

[3]The interview was with a social worker of a CPC at the request of the Department of Human Services.

confidential under Iowa Code section 22.7, or another independent provision of Iowa law.

**B. Scope of Injunction.** The scope of the permanent injunction issued by the district court restrains Harold from

> communicating with and/or otherwise contacting K.M.L. and S.E.L. in any matter whatsoever, including but not limited to, all written and in person contact or communications, all contact or communications through a third party, passing notes or gifts, or attending the sporting or other extracurricular events of either child; provided, however, that Defendant Harold Brumbaugh may attend the extracurricular events of his step-grandchildren, which may also involve K.M.L. or S.E.L. as a participant, and he may attend any game or event at any sports complex, provided that neither child is participating in the game or event which he is attending and he make every effort to avoid visual contact with K.M.L. and S.E.L. at all times, and shall be no closer in proximity to them than 100 feet. This injunction shall remain in place until K.M.L. and S.E.L. each reach the age of majority.

The scope of the injunction as issued still allows Harold access to Angela's residence so long as the children are not present. It also allows Harold to attend certain events the girls participate in if his step-grandchildren are also participants. Even if Harold attends his step-grandchildren's extracurricular activities, he is still required to avoid eye contact with K.M.L. and S.E.L. and remain at least 100 feet away during the events.

Kent requests that the scope of the permanent injunction be modified to prevent Harold from having access to Angela's home, even when the children are not there. He is concerned that Harold will leave notes for K.M.L. at Angela's home. He is also worried that once K.M.L. receives her driver's license in January, she will be able to stop by Angela's home while Harold is visiting. Kent also requests that the scope of the injunction be expanded to prevent Harold from attending any

extracurricular activity of either child, regardless of whether his step-grandchildren are participants. After the temporary injunction was entered, Harold attended a softball tournament and stood directly behind K.M.L.'s dugout or in K.M.L.'s line of sight. After being in Harold's presence at the game, K.M.L. acted like she was "in a funk" or not herself for a few days. She was withdrawn and moody, and was affected by Harold's presence at her game.

Harold argues that the scope of the permanent injunction should not be expanded because it would do nothing to further protect K.M.L. or S.E.L. He also argues there is no evidence that Angela would not protect K.M.L. in the absence of Kent's suggested provisions. Harold claims that limiting his ability to attend the games of his step-grandchildren would harm his familial relationships. Harold asserts that expanding the scope of the injunction would only serve to punish him, rather than to protect K.M.L.

While we emphasize that a permanent injunction is a remedy that should be granted only with caution, an injunction is warranted when it is necessary to prevent irreparable injury to the plaintiff and when there is no other adequate remedy at law. *In re Estate of Hurt*, 681 N.W.2d 591, 595 (Iowa 2004); *Opat v. Ludeking*, 666 N.W.2d 597, 603 (Iowa 2003).

A plaintiff who seeks a permanent injunction must establish "(1) an invasion or threatened invasion of a right; (2) that substantial injury or damages will result unless the request for an injunction is granted; and (3) that there is no adequate legal remedy available." *City of Okoboji v. Parks*, 830 N.W.2d 300, 309 (Iowa 2013) (quoting *Sear v. Clayton Cty. Zoning Bd. of Adjustment*, 590 N.W.2d 512, 515 (Iowa 1999)). When determining whether an injunction is the proper remedy,

the court must weigh the relative hardship to each party. *Opat*, 666 N.W.2d at 604. A permanent injunction should be structured so it affords relief to the complainant but does not interfere with the legitimate and proper actions of the person against whom it is granted. 42 Am. Jur. 2d *Injunctions* § 11, at 606 (2010). A permanent injunction should only be ordered to prevent damage likely to occur in the future; it is not meant to punish for past damage. *Id.*

Generally, the scope of the violation determines the scope of the remedy provided in the permanent injunction. *Dobbs*, 729 N.W.2d at 436. The scope "should be set forth with certainty and clearness so that persons bound by the decree may readily know what they must refrain from doing without speculation or conjecture." *Opat*, 666 N.W.2d at 605 (quoting *205 Corp. v. Brandow*, 517 N.W.2d 548, 552 (Iowa 1994)). It should be "drawn narrowly enough to address the harm sought to be redressed." *Matlock v. Weets*, 531 N.W.2d 118, 123 (Iowa 1995).[4]

On appeal, Kent argues that the permanent injunction should be expanded to prevent Harold from visiting Angela's home and from attending any of the children's games. The question we must answer is whether, absent the additional requested provisions, Kent's right to manage and care for his children is invaded or threatened to be invaded. *See, e.g., City of Okoboji*, 830 N.W.2d at 309.

The harm that Kent seeks to avoid by expanding the terms of the injunction is already prevented by the current terms of the permanent injunction. Kent expresses concern that the girls could stop by to visit Angela while Harold is already present. However, the terms of the

---

[4]The district court found that Kent had met his burden of demonstrating a permanent injunction was appropriate, and neither party has appealed the underlying grounds for the injunction.

injunction imposed by the district court already prohibit Harold from "all . . . in person contact or communications." Should this situation occur, the permanent injunction would already require Harold to leave Angela's house.

Kent also believes that Harold will use his opportunity to visit Angela to leave notes for K.M.L. Again, the terms of the permanent injunction already prevent Harold from "passing notes or gifts." If Harold does pass a note to K.M.L. while present at Angela's house, the injunction already provides a remedy. Kent cannot use concern that Harold will violate a term of the permanent injunction in the future to justify its expansion. The scope of the injunction already "set[s] forth with certainty and clearness" that Harold is prohibited from communicating with the girls in person or through a third person, and from passing notes or gifts. *Opat*, 666 N.W.2d at 605 (quoting *205 Corp.*, 517 N.W.2d at 552).

Kent also expresses concern that Harold has previously attended a softball game as the coach for another team and repeatedly walked by or stood behind K.M.L.'s dugout. Kent described K.M.L. as being "in a funk" and "not herself" for days after the game. Again, the terms of the permanent injunction already prevent this type of behavior. The injunction requires that Harold "make every effort to avoid visual contact with K.M.L. and S.E.L. at all times" and prevents him from being closer than 100 feet while the children are participating in extracurricular activities. The proper remedy for Kent in this situation would be to enforce the current terms of the permanent injunction rather than seek to expand it. Kent has failed to establish that not expanding the terms of the permanent injunction would cause the "invasion or threatened

invasion of a right." *City of Okoboji*, 830 N.W.2d at 309 (quoting *Sear*, 590 N.W.2d at 515).

Kent also fails to establish that "substantial injury or damages will result unless the request for an injunction is granted." *Id.* (quoting *Sear*, 590 N.W.2d at 515). In order to demonstrate injury or damages, Kent must be able to show that "there is a real and immediate threat the injury will either continue or be repeated" unless the requested terms are included in the permanent injunction. 42 Am. Jur. 2d *Injunctions* § 2, at 592. As stated above, all of the actions Kent seeks to prevent by expanding the terms of the permanent injunction are already addressed in the current terms of the injunction. If Harold does have contact with the girls at Angela's house, leave notes, or remain in their line of sight at softball games, Kent already has a remedy: the enforcement of the current permanent injunction.

Likewise, Kent is unable to demonstrate that "there is no adequate legal remedy available" if the terms of the injunction are not expanded. *City of Okoboji*, 830 N.W.2d at 309 (quoting *Sear*, 590 N.W.2d at 515). His proposed terms do not prevent any harm that is not already contemplated by and included in the current permanent injunction. The legal remedy for Kent's concerns that Harold will communicate with the girls or loiter nearby during their softball games is to enforce the terms of the permanent injunction.

We hold that Kent has not demonstrated that the terms of the permanent injunction should be expanded.

### IV. Conclusion.

The district court did not conduct a hearing or otherwise make factual findings pursuant to Iowa Code section 22.8. While sealing the ruling granting the permanent injunction and issuing a separate writ of

injunction may be an appropriate remedy in this case, no hearing was conducted pursuant to the Iowa Open Records Act in support of the district court conclusion. We therefore remand the case for a hearing regarding redissemination of the district court's ruling granting permanent injunctive relief consistent with the requirements of the Iowa Open Records Act. We also hold the terms of the permanent injunction should not be expanded. We affirm the decision of the district court with regard to the terms of the injunction and remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**