## IN THE COURT OF APPEALS OF IOWA

No. 16-1418
Filed November 8, 2017

**CLEARLY COMPLIANT, L.L.C.,**
        Plaintiff-Appellant/Cross-Appellee,

**vs.**

**THERESA M. BORNBACH and CHARITY RESOURCES, L.L.C.,**
**d/b/a CAPSTONE CHARITY RESOURCES, L.L.C.,**
        Defendants-Appellees/Cross-Appellants.
_____

        Appeal from the Iowa District Court for Linn County, Robert E. Sosalla,

Judge.


        Clearly Compliant, L.L.C. appeals, and Theresa Bornbach and Capstone

Charity Resources, L.L.C. cross-appeal from the district court's order denying the

request for a permanent injunction.  **AFFIRMED.**



        J. Michael Westonand Brenda K. Wallrichs of Lederer Weston Craig,

P.L.C., Cedar Rapids, for appellant.

        Vernon P. Squires of Bradley & Riley P.C., Cedar Rapids, for appellees.



        Heard by Danilson, C.J., Mullins, J., and Carr, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**DANILSON, Chief Judge.**

Clearly Compliant, L.L.C. appeals from the district court's order denying its request for a permanent injunction and attorney fees. Clearly Compliant contends it is entitled to a permanent injunction preventing Theresa Bornbach and Charity Resources, L.L.C., d/b/a Capstone Charity Resources, L.L.C. (Capstone), from continuing to use Clearly Compliant's trade-secret documents and pricing model to unfairly compete with Clearly Compliant. Clearly Compliant also asserts the district court abused its discretion in denying its request for attorney fees. On cross-appeal, Bornbach and Capstone maintain the district court should have granted Bornbach and Capstone's request for attorney fees.

We conclude the district court properly denied Clearly Compliant's request for a permanent injunction and affirm on that ground. We also affirm the district court's order denying both parties' requests for attorney fees.

**I. Background Facts & Proceedings.**

Clearly Compliant is a charitable solicitation registration business formed by Sarah Else in 2008. Clearly Compliant provides services to nonprofit organizations to identify and ensure compliance with various states' requirements for the registration of organizations that solicit charitable donations. Else contends she spent years researching the requirements and practices respecting charitable solicitation registration in each state before obtaining her first paying client in 2011. Based on her research, Else developed a number of materials for Clearly Compliant, including an assessment form, intake form, uniform board resolution, confidentiality agreement, and a master spreadsheet of state-specific

registration information. Else marked the documents "confidential" and kept them in an internet Dropbox account that required private log-in credential to access. Else also created a pricing model that encompasses a per-state fee with a reduced renewal fee and can include separate costs for additional tasks.

In building her business, Else sought assistance from Bornbach, who owned a business-coaching company, Biz Savvy. Else participated in group classes offered by Biz Savvy in business development and marketing strategy. Bornbach promised confidentiality to the clients of Biz Savvy. Else also rented office space from an entity called Co-Works, which was owned by Bornbach. Bornbach stopped rendering coaching services to Else in December 2013.

In February 2014, Else and Bornbach began negotiations to become partners in Clearly Compliant. While negotiating the potential partnership, Bornbach began collaborating with Else on client development. As part of the collaboration and to further the partnership negotiations, Else gave Bornbach access to Clearly Compliant's materials. Else did not require Bornbach to sign a nondisclosure, confidentiality, or noncompete agreement, but she expected Bornbach to maintain the promise of confidentiality made as part of the business-coaching relationship.

Also in February 2014, Bornbach purchased a SalesForce[1] account under the name of Clearly Compliant and began populating the account with Clearly Compliant's materials. Else testified at the temporary-injunction hearing that she was aware of the SalesForce account and that Bornbach was populating the

---

[1] A SalesForce account is a secure internet database to which individuals can upload, store, and share documents.

account with Clearly Compliant's materials "at a certain point" in March 2014. Bornbach testified at the temporary-injunction hearing that the purpose of setting up the SalesForce account for Clearly Compliant was to "automate some of the[] processes and not work from so many disparate spreadsheets that we don't know for sure when they're all—have been updated." At the permanent-injunction hearing, Bornbach explained the SalesForce account was intended "to demonstrate to [Else] that technology could be a tool that she—we could consider using in this business as we move forward together."

The partnership negotiation was ultimately unsuccessful; Bornbach ended the negotiations and her relationship with Else on May 2, 2014. On May 7, Bornbach informed Else she intended to compete with Clearly Compliant. From that time, Clearly Compliant and Capstone have directly competed in the field of charitable-solicitation registration.

Clearly Compliant filed the petition in this matter on December 19, 2014, seeking temporary and permanent injunctions preventing Capstone from further misappropriating trade-secret information. After a hearing held April 9 and May 26, 2015, the district court granted the request for a temporary injunction. The temporary injunction enjoined Bornbach and Capstone from

> (a) any further misappropriation of [Clearly Compliant]'s trade secret information learned or discovered through any association, business dealing, or conversation with Sarah Else, [Else's husband], or any agent, employee, or volunteer worker of [Clearly Compliant]; (b) disclosing, using, or selling any information found in [Clearly Compliant]'s information and/or marketing strategies; and (c) injuring [Clearly Compliant]'s business reputation. I further enjoin Theresa Bornbach and [Capstone] from any further contact with [Clearly Compliant]'s clients and prospects that Sarah Else and/or [Clearly Compliant] disclosed to Theresa Bornbach or of

whom Theresa Bornbach learned through her association with Sarah Else and/or [Clearly Compliant] prior to May 2, 2014.

The hearing on the request for a permanent injunction was held June 21 and 22, 2016. The court entered an order on July 25, 2016, denying the request for a permanent injunction. The court determined that at the time of the permanent-injunction hearing Clearly Compliant and Capstone employed two different business models. The court stated that Clearly Compliant's master spreadsheet in its current, updated form[2] would likely constitute a trade secret justifying conversion of the temporary injunction into a permanent injunction to bar Capstone from using the current spreadsheet. However, the court noted both parties testified Capstone does not have access to the spreadsheet in its current form. Thus, the court determined imposition of a permanent injunction was not appropriate. The court also denied both parties' requests for attorney fees. Clearly Compliant now appeals, and Bornbach and Capstone cross-appeal.

**II. Standard of Review.**

"We review actions for injunctive relief de novo." *Master Builders of Iowa, Inc. v. Polk Cty.*, 653 N.W.2d 382, 387 (Iowa 2002).

We review the district court's refusal to award attorney fees pursuant to Iowa Code chapter 550 (2014) for an abuse of discretion. *Olson v. Nieman's, Ltd.*, 579 N.W.2d 299, 316 (Iowa 1998).

---

[2] Else testified the spreadsheet must be updated frequently to keep abreast of the fast-changing state laws respecting charitable solicitation registration.

**III. Permanent Injunction.**

Clearly Compliant contends the district court should have granted a permanent injunction preventing Capstone from utilizing Clearly Compliant's pricing model and materials to unfairly compete with Clearly Compliant.

"A plaintiff who seeks a permanent injunction must establish '(1) an invasion or threatened invasion of a right; (2) that substantial injury or damages will result unless the request for an injunction is granted; and (3) that there is no adequate legal remedy available.'" *In re Langholz*, 887 N.W.2d 770, 779 (Iowa 2016) (citation omitted).

> When determining whether an injunction is the proper remedy, the court must weigh the relative hardship to each party. A permanent injunction should be structured so it affords relief to the complainant but does not interfere with the legitimate and proper actions of the person against whom it is granted. A permanent injunction should only be ordered to prevent damage likely to occur in the future; it is not meant to punish for past damage.

*Id.* at 779-80 (citations omitted).

Iowa Code section 550.3(1) allows "[t]he owner of a trade secret [to] petition the court to enjoin an actual or threatened misappropriation."

**IV. Trade Secret and Misappropriation.**

Clearly Compliant maintains its pricing model and materials were trade secrets and were inappropriately taken and utilized by Bornbach and Capstone to commence and operate their own charitable-solicitation-registration business. Clearly Compliant argues the district court improperly refused to grant injunctive relief to prevent Capstone from further misappropriating Clearly Compliant's trade-secret information.

Before determining if injunctive relief may be awarded, there must first be sufficient evidence that the information sought to be protected constitutes a "trade secret" under Iowa law. *See* Iowa Code § 550.3(1); *Lemmon v. Hendrickson*, 559 N.W.2d 278, 279 (Iowa 1997).

A trade secret is defined as

> information, including but not limited to a formula, pattern, compilation, program, device, method, technique, or process that is both of the following:
>     (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by a person able to obtain economic value from its disclosure or use.
>     (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Iowa Code § 550.2(4). Factors to be considered when evaluating if information constitutes a trade secret include:

> (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken . . . to guard the secrecy of the information; (4) the value of the information [to the business and its competitors]; (5) the amount of effort or money expended . . . in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Cemen Tech, Inc. v. Three D Indus., L.L.C.*, 753 N.W.2d 1, 7 (Iowa 2008) (alterations in original) (citation omitted).

Second, it must be established that the information was "misappropriated." *See* Iowa Code § 550.3(1); *Cemen Tech, Inc.*, 753 N.W.2d at 6. Iowa law defines misappropriation as including any of the following:

>     (a) Acquisition of a trade secret by a person who knows that the trade secret is acquired by improper means.

(b) Disclosure or use of a trade secret by a person who uses improper means to acquire the trade secret.

(c) Disclosure or use of a trade secret by a person who at the time of disclosure or use, knows that the trade secret is derived from or through a person who had utilized improper means to acquire the trade secret.

(d) Disclosure or use of a trade secret by a person who at the time of disclosure or use knows that the trade secret is acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

(e) Disclosure or use of a trade secret by a person who at the time of disclosure or use knows that the trade secret is derived from or through a person who owes a duty to maintain the trade secret's secrecy or limit its use.

(f) Disclosure or use of a trade secret by a person who, before a material change in the person's position, knows that the information is a trade secret and that the trade secret has been acquired by accident or mistake.

Iowa Code § 550.2(3).

*A. Are Clearly Compliant's pricing model and materials trade secrets?*

Else argues she developed Clearly Compliant's unique pricing model based on her extensive research, and Capstone continues to improperly utilize the same pricing model to unfairly compete. Clearly Compliant employs a pricing strategy whereby clients are charged an initial-registration fee in the amount of $175 per state, and a renewal fee in the amount of $150 per state. Capstone also charges clients a set initial-registration fee and a lower renewal fee per state but offers lower amounts than Clearly Compliant for both fees. Both Clearly Compliant and Capstone charge costs for additional tasks, such as postage. Although Capstone offers lower initial-registration and renewal fees, its costs ultimately result in a higher total bill for its clients. Clearly Compliant also requires a three-year contract term for its clients. Else testified at the permanent-injunction hearing that Capstone's website states a three-year contract is required for

clients engaging in services described as self-service and self-service plus full service. Clearly Compliant contends Capstone employs Clearly Compliant's trade-secret pricing model but charges slightly less for the initial registration and renewal fees to undercut Clearly Compliant and lure clients with lower advertised prices.

Clearly Compliant also asserts Capstone improperly acquired and used Clearly Compliant's materials, including its assessment form, intake form, uniform board resolution, and confidentiality agreement. Clearly Compliant asserts the materials were created based on Else's research and could not be easily duplicated, and through Bornbach's access to these documents, Capstone created and is using nearly-identical documents.

Capstone responds it has not used any of Clearly Compliant's documents except the confidentiality agreement, but such use ceased prior to the temporary-injunction hearing in February 2015. Bornbach testified at trial she authored Capstone's materials based on her independent research and use of the NOLO guide[3] on nonprofit fundraising registration. Capstone also asserts the information Clearly Compliant seeks to be protected is not trade-secret information because it is publicly available and because Clearly Compliant provided the information to its clients without requiring the clients keep the materials confidential.[4]

---

[3] The NOLO guide is a trade publication that provides information about the charitable-solicitation-registration procedure; how to determine whether an organization is exempt from registration in particular states; and state-specific requirements, forms, and costs.

[4] The confidential agreement promises clients that their information will be kept confidential but does not require the clients to keep Clearly Compliant's information

We acknowledge—if properly protected—the pricing model and materials could constitute trade secrets. *See* Iowa Code § 550.2(4); *US West Commc'ns, Inc. v. Office of Consumer Advocate*, 498 N.W.2d 711, 714 (Iowa 1993) ("Business information may . . . fall within the definition of a trade secret, including such matters as maintenance of data on customer lists and needs, source of supplies, confidential costs, price data and figures."). Here, when Else and Bornbach were involved in partnership negotiations but were not yet partners in Clearly Compliant, Else shared information and materials with Bornbach and allowed Bornbach to begin collaborating on client outreach. Else recalled Bornbach had promised confidentiality to her business-coaching clients, and Else presumed the confidentiality would continue during the partnership negotiations. However, Else did not allege a breach of the business-coaching confidentiality agreement in the petition, and Bornbach testified the business-coaching relationship ceased prior to the start of the partnership negotiations. Significantly, Clearly Compliant did not require Bornbach to sign a nondisclosure or confidentiality agreement prior to giving Bornbach access to the alleged trade-secret information. *See Cemen Tech, Inc.*, 753 N.W.2d at 8 (stating "nondisclosure and confidentiality agreements are relevant to determine whether information constitutes a trade secret"). We find under the circumstances Clearly Compliant did not make reasonable efforts to maintain the secrecy of its pricing model and materials as required by section 550.2(4)(b).

---

confidential, although many of Clearly Compliant's forms are marked "confidential" on their face.

The record also reflects that nearly all of the information at issue in this matter is presently publicly available. Bornbach and Capstone admitted the 2013 and 2016 NOLO guides into evidence. The guides provide a comprehensive overview of the charitable-solicitation-registration business and lists state-specific information regarding registration requirements. Bornbach testified she was also able to obtain registration information by referencing state websites and speaking to state employees directly. In order for information to be a trade secret, "[t]he subject matter . . . must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as [their] secret." *Id.* (citation omitted).

Moreover, while comparison of both companies' materials—including the intake forms, assessment forms, short-form board resolutions, and confidentiality agreements—indicates Clearly Compliant's materials were likely used in the creation of Capstone's materials, at the time of the permanent-injunction hearing the materials of the two companies were not the same. For example, Clearly Compliant's intake form has fifty-one questions compared to Capstone's forty-four,[5] and not all of Capstone's questions can be found on Clearly Compliant's intake form. Similarly, while Clearly Compliant and Capstone's assessment forms seek similar information, Clearly Compliant's contains nine categories of information and Capstone's contains seventeen.

Additionally, Clearly Compliant's short-form board resolution states as follows:

---

[5] Counting its subparts, Capstone's intake form has eighty-one points of inquiry.

> {NAME OF CLIENT} Board of Directors resolve that {NAME OF CLIENT}'s President and CEO, Executive Vice President, Chief Executive Officer, other {NAME OF CLIENT} officers or directors as required by state law, or their designated official, Clearly Compliant, L.L.C., have the authority to execute documents and on-line forms for registration, renewal, financial reporting, licensing, and other mandatory state reporting requirements for charitable solicitation requirements. The {NAME OF CLIENT} Board of Directors further acknowledges that they will continue to monitor matters of policy and finances of the organization.

Capstone's board resolution reads:

> The Board of Directors of [client] hereby resolve that the President /CEO, Executive Vice President, Chief Executive Officer, other officers/directors as required by state law, or their designated official, Capstone Charity Resources, have the authority to generate and execute documents and online forms for the purposes of Charitable Solicitation Registration/Renewal, periodic financial reporting, licensing, and other mandatory state reporting requirements for charitable solicitation requirements.
>
> The Board of Directors further acknowledges that they will continue to monitor this matter as part of policy and financial compliance.

The two uniform board resolutions are quite similar. However, at trial Bornbach presented a Google-search result completed the previous evening reflecting the information included in the uniform board resolutions is quickly accessible online.

The materials also include a confidentiality agreement that Clearly Compliant requires each client to sign. The agreement provides Clearly Compliant may obtain certain information from the client, which will be kept confidential. The agreement identifies the following information will be confidential:

> Information relating to proprietary ideas, existing and/or contemplated products and services, costs, profit and margin information, finances and financial projections, customers, clients, marketing, current or future business plans and models, donor information, and fundraising strategies regardless of whether such

information is designated as "Confidential Information" at the time of its disclosure.

Capstone acknowledges it has used the identical confidentiality agreement in the past but contends it has since revised the form it now uses. Capstone contended it ceased use of the identical agreement in February 2015, and the record evidence reflects that its use of the agreement ended by at least by March 6, 2015. But the revised form remains identical except instead of itemizing the information or materials to be kept confidential, the revised form states "[a]ny and all information provided by Discloser to Recipient." However, we are unable to conclude the confidentiality agreement or the board resolution derive any independent economic value, which is required to constitute a trade secret. *See Olson*, 579 N.W.2d at 313. We doubt any potential client would select Clearly Compliant because of the form of these two documents.

Comparison of Clearly Compliant's and Capstone's pricing models also reveals differences. While Capstone's pricing model is similar to Clearly Compliant's, Capstone charges different fees and has costs for differing additional items. Ultimately, Capstone actually offers the more-expensive product. We also note Clearly Compliant provided pricing information to its customers with no requirement the pricing information be kept confidential. *See Titan Intern'l, Inc. v. Bridgestone Firestone North Am. Tire, L.L.C.*, 752 F. Supp. 2d 1032, 1040 (S.D. Iowa 2010) (stating "customer pricing information ultimately belongs to the customer and can be divulged by the customer to anyone if the customer is willing to provide that information").

At this juncture, Clearly Compliant has failed to prove the materials and pricing model constitute trade secrets. We acknowledge Clearly Compliant expended much time and effort to develop its pricing model and materials, and the information is not readily known outside of the business. But the NOLO guide and other public-information forums now make much of the information easy to acquire. Moreover, Clearly Compliant did not take reasonable steps to protect the secrecy of the information, and Capstone's current materials and pricing model are different than Clearly Compliant's materials and pricing model. More importantly, both parties agree Bornbach and Capstone do not have access to Clearly Compliant's materials or pricing model in their current form. The economic value is in Clearly Compliant's updated materials, not in the outdated information. Thus, as the district court noted, the circumstances from the time of the entry of the temporary injunction differ from the facts at the time of the permanent-injunction hearing.

*B. Was there a misappropriation?* Here, all of the materials were disclosed to Bornbach without any requirement of confidentiality. We note the United States Supreme Court explained that once a trade secret is disclosed to "others who are under no obligation to protect the confidentiality of the information, or [is] otherwise publicly disclose[d] . . . [the] property right is extinguished." *Ruckelshaus v. Monsato Co.*, 467 U.S. 986, 1002 (1984). We believe this principle is equally applicable to these facts. Under Iowa law, the misappropriation must arise under "improper means" unless the recipient otherwise owed a duty to maintain secrecy of the information or the information

was obtained by accident or mistake. *See* Iowa Code § 550.2(3). "Improper means" is defined as "theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy, or espionage, including but not limited to espionage through an electronic device." *Id.* § 550.2(1).

Here, Bornbach owed no duty to Clearly Compliant and did not receive the information by accident or mistake. Although Clearly Compliant alleges the taking was under stealth, there is insufficient evidence Bornbach misrepresented her interest in a partnership of Clearly Compliant and simply wanted to steal "trade secrets." Rather, it appears more likely that only after negotiations broke down, or nearly so, did Bornbach decide to begin her business. The information was freely provided to Bornbach during partnership discussions without any obligation to keep the information confidential. As a result, even if we could conclude Clearly Compliant's pricing model and materials were trade secrets, we are unable to conclude Bornbach misappropriated the information.

In sum, Clearly Compliant did not take reasonable steps to protect the information for which it now seeks trade-secret protection. Clearly Compliant voluntarily gave Bornbach access to its pricing model and materials without securing a nondisclosure or confidentiality agreement. Additionally, during the pendency of this matter, Bornbach had changed and updated Capstone's business method,[6] pricing model, and materials based on her independent research using publicly-available information. The outdated materials no longer have any economic value. Although Bornbach and Capstone may be guilty of a moral breach of trust and friendship, we conclude Clearly Compliant has not met

---

[6] Notably, Capstone utilizes a third-party software as part of its business method.

its burden to show that Capstone misappropriated a trade secret or that Clearly Compliant would incur future damages authorizing permanent injunctive relief. The district court properly denied the request for a permanent injunction.

**V. Attorney Fees.**

Clearly Compliant also asserts the district court should have granted its request for attorney fees. Clearly Compliant requested attorney fees in its petition for temporary and permanent injunctions.

If Clearly Compliant has properly preserved the issue of an award of attorney fees because of its successful prosecution in obtaining a temporary injunction, we nonetheless conclude the district court has not abused its discretion in denying any relief. Iowa Code section 550.6 provides, in part, that the court "may award actual and reasonable attorney fees to the prevailing party in an action under this chapter." However, a successful party must also prove the party enjoined acted willfully and maliciously in the appropriation. Iowa Code § 550.6(3). The district court reserved its decision on the attorney fees request at the time of entry of the temporary injunction and made no finding of any willful or malicious misappropriation. In its final order denying a permanent injunction, the district court stated:

> Clearly Compliant has successfully prosecuted its request for a temporary injunction. Bornbach and Capstone ha[ve] successfully defended themselves from Clearly Compliant's request for a permanent injunction. Under these circumstances I find that each party should be responsible for their own attorney fees.

One question is whether Clearly Compliant was the prevailing party. It is certainly possible that after a temporary injunction is entered, the successful

party may choose to forego seeking a permanent injunction after the passage of some time. In that event, the successful party would have a stronger argument than does Clearly Compliant of being the prevailing party. More significantly, there is no requirement that any attorney fees be awarded. *See* Iowa Code § 550.6. Here, both parties sought attorney fees with Clearly Compliant succeeding in obtaining a temporary injunction and Bornbach and Capstone prevailing on the request for a permanent injunction. We conclude there was no abuse of discretion as the district court adequately explained its reasons and accomplished equity under these facts. *See* Iowa R. Civ. P. 1.1501 (an injunction may be sought as a remedy in an action in equity); *see also Gablemann v. NFO, Inc.*, 606 N.W.2d 339, 342 (Iowa 2000) (stating the court abuses its discretion "only when the court rests its discretionary ruling on grounds that are clearly unreasonable or untenable").

## VI. Cross-Appeal.

On cross-appeal, Bornbach and Capstone contend the district court should have granted their request for attorney fees because Clearly Compliant brought its claims in bad faith. Iowa Code section 550.6(1) allows the court to award attorney fees to the prevailing part if "[a] claim of misappropriate is made in bad faith." Bad faith can be shown by "(1) objective speciousness of the plaintiff's claim, and (2) plaintiff's subjective misconduct . . . . Objective speciousness exists where there is a complete lack of evidence supporting [the] plaintiff's claims." *Primmer v. Langer*, No. 13-0930, 2014 WL 4930456, at *10

(Iowa Ct. App. Oct. 1, 2014) (quoting *Sun Media Sys. Inc. v. KDSM, L.L.C.*, 587 F. Supp. 2d 1059, 1073 (S.D. Iowa 2008)).

We do not agree Clearly Compliant's action was initiated in bad faith. Notably, the district court initially awarded the request for a temporary injunction on the facts presented by Clearly Compliant. Although we ultimately conclude the court properly denied the request for a permanent injunction, there was not a complete lack of evidence supporting Clearly Complaint's claims. We therefore conclude the district court did not abuse its discretion in denying Bornbach and Capstone's request for attorney fees, and we affirm.

**VII. Conclusion.**

On our de novo review, we find Clearly Compliant has not shown it is entitled to the protection of trade-secret information under section 550.3(1). We therefore conclude the district court properly denied Clearly Compliant's request for a permanent injunction. We also conclude the district court did not abuse its discretion in denying both parties' requests for attorney fees.

**AFFIRMED.**